Emma Lee **ANDERSON,**
et. al., **Plaintiffs,**

v.

The **BOEING COMPANY** and
**Boeing North American,
Inc., Defendants.**

No. 02–CV–0196–EA(M).

United States District Court,
N.D. Oklahoma.

March 29, 2004.

Joseph R. Farris, Paul F. Prather, Paula J. Quillin, Feldman Franden Woodard Farris & Boudreaux, Tulsa, OK, Steve W. Berman, Jeffrey T. Sprung, Hagens Berman LLP, Seattle, WA, for Plaintiffs.

Kimberly Lambert Love, Mary L. Lohrke, Boone Smith Davis Hurst & Dickman, Tulsa, OK, James M. Armstrong, Mary Kathleen Babcock, Vaughn Burkholder, Mikel Stout, Foulston & Siefkin, Wichita, KS, C. Geoffrey Weirich, Maureen Ellen O'Neill, Paul Hastings Janofsky & Walker, Atlanta, GA, Barbara Berish Brown, Paul Hastings Janofsky & Walker LLP, Washington, DC, for Defendants.

## *ORDER*

EAGAN, District Judge.

On December 13, 2002, the Court issued an Order (Dkt.# 88) which granted in part and denied in part the motion to dismiss of The Boeing Company. The Order granted the motion to dismiss as to plaintiffs' claims for: (1) violation of the Oklahoma Anti–Discrimination Act; (2) violation of the Oklahoma Equal Pay Act; (3) breach of contract under Executive Order 11246; (4) breach of contract under section 301 of the National Labor Management Relations Act ("LMRA § 301"); and (5) negligent supervision.[1] Dkt. # 88, at 10. The Order denied the motion to dismiss as to plaintiffs' claims for breach of implied employment contracts. *Id.*

---

1. On July 18, 2003, the Court issued an Order (Dkt.# 146) granting Plaintiffs' Application to Rule First Amended Complaint Out–of–Time. The Court found that plaintiffs should be granted leave to file an amended complaint to expressly state a breach of contract claim under the LMRA. Therefore, plaintiffs' claims under LMRA § 301 are live claims.

On February 13, 2003, the Court issued an Order (Dkt.# 94) which granted in part and denied in part defendants' Motion for Dismissal Under 12(b)(1) or, Alternatively, to Stay Proceedings and Compel Arbitration. The Order granted defendants' motion to stay proceedings pending arbitration of the claims by plaintiffs Joyce Kellione, Carol Maxwell, Barbara Odom, and Peggy Sturm, granted defendants' motion to compel those plaintiffs to submit their claims to arbitration, and denied defendants' motion to dismiss the claims of those above named plaintiffs.

Now before the Court are Defendants' Motion for Partial Summary Judgment (Dkt.# 107), Plaintiffs' Motion for Class Certification (Dkt.# 127), Defendants' Motion to Exclude Expert Testimony of Dr. Bernard Siskin (Dkt.# 155), and Defendants' Motion for Partial Summary Judgment (Dkt.# 164).[2]

First, the Court will determine whether the opinion of plaintiffs' expert is admissible for class certification purposes. Next, the Court will address class certification. Finally, the Court will consider defendants' motions for summary judgment.

## I.

Boeing[3] requests that the Court strike the testimony in support of class certification of plaintiffs' statistical expert, Bernard R. Siskin, Ph.D. ("Siskin"). *See* Def. Motion to Exclude, Dkt. # 155, at 1–3, *citing* FED. R. EVID. 702 and *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Boeing argues that at the class certification stage Siskin's analysis of compensation and overtime are not relevant to the issues before the Court. *Id.* at 2. Boeing also claims that Siskin's studies of overtime are "patently unreliable." *Id.* Plaintiffs argue that Boeing cites the wrong standard for the admission of expert testimony at the class certification stage and that Boeing's attacks on Siskin's opinions go to

the weight, not the admissibility, of his testimony. Pl. Resp. Br., Dkt. # 167, at 4, 8.

■ Fed.R.Evid. Rule 702 provides:

If scientific, technical, or other specialized knowledge will assist *the trier of fact* to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED. R. EVID. 702 (emphasis added). Rule 702 was amended in 2000 in response to *Daubert* and its progeny. *Daubert* articulated "the standard for admitting expert scientific testimony *in a federal trial.*" 509 U.S. at 582, 113 S.Ct. 2786 (emphasis added).

Rule 702 and *Daubert,* in other words, are applied when the merits of a case are weighed. Courts do not conduct an inquiry into the merits at the class certification stage. *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); Fed.R.Civ.P. 23(c)(1). Courts, therefore, are unwilling to conduct a full *Daubert* analysis at the class certification stage. *See In re Visa Check/MasterMoney Antitrust Litigation,* 280 F.3d 124, 132, n. 4 (2nd Cir.2001)(a motion to strike expert testimony under *Daubert* "involves an inquiry distinct from that for evaluating expert evidence in support of a motion for class certification"); *Vickers v. General Motors Corp.,* 204 F.R.D. 476, 479 (D.Kan.2001) (*Daubert* analysis is not required at the class certification stage); *Thomas & Thomas Rodmakers v. Newport Adh. & Comp.,* 209 F.R.D. 159, 162 (C.D.Cal.2002) (lower *Daubert* standard is applied at class certification stage); *Bacon v. Honda of America Mfg., Inc.,* 205

**2.** In conducting the rigorous analysis necessary to decide whether to certify a class, the Court has taken into account Defendants' Notice of Supplemental Authority (Dkt.# 183) and plaintiffs' response thereto, as well as plaintiffs' Notice of Supplemental Authority (Dkt.# 189) and Defen-

dants' Notice of Supplemental Authority (Dkt.# 190).

**3.** For purposes of this Order, defendants, The Boeing Company and Boeing North American, Inc., will be collectively referred to as "Boeing."

F.R.D. 466, 470 (S.D.Ohio 2001)*(Daubert* test is limited at class certification stage to whether expert evidence is inadmissible as a matter of law); *In re Visa Check/Mastermoney Antitrust Litigation,* 192 F.R.D. 68, 76 (E.D.N.Y.2000)(Daubert test at class certification stage is limited to purpose for which expert opinion is offered); *In re Polypropylene Carpet Antitrust Litigation,* 996 F.Supp. 18, 26 (N.D.Ga.1997)(admissibility under *Daubert* is not before the court at the class certification stage). *Dean v. Boeing Co.,* 2003 U.S. Dist. LEXIS 8787, at *33–34 (D. Kan. Apr 24, 2003),[4] Thus, "because the Court cannot inquire into the merits, and because discovery on the merits has yet to be conducted in this case, the parties are not now subject to Rule 702 and *Daubert* as those tests are applied at trial." *Id.* at *34. Rather, the Court will examine Siskin's testimony in the context of class certification and "determine whether they are so fatally flawed as to be inadmissible as a matter of law." *Id.* at *35, *citing In re Visa Check/MasterMoney Antitrust Litigation,* 280 F.3d at 135; *Vickers,* 204 F.R.D. at 479.

Siskin is "a nationally recognized labor economist." *Sheppard v. Consol. Edison Co. of N.Y., Inc.,* No. 94–CV–0403, 2002 WL 2003206, at *3, 2002 U.S. Dist. LEXIS 16314, at *10 (E.D.N.Y. Aug. 1, 2002). Siskin is a former Chairman of the Department of Statistics at Temple University. Pl. Resp. Br., Dkt. # 167, at 3. Since 1991, Siskin has been Senior Vice President and Chair, Applied Statistics Section of the Center for Forensic Economic Studies. *Id.* Siskin received his Ph.D. in Statistics from the Wharton School of the University of Pennsylvania in 1970. *Id.* Finally, Siskin has been retained by governmental and private organizations, including the Third Circuit Task Force on Race and Gender, the Equal Employment Opportunity Commission, the Civil Rights Division of the U.S. Department of Justice, and the Office of Federal Contractor Compliance Programs. *Id.*

Siskin states that he conducted "a preliminary statistical investigation of compensation and overtime among males and females employed at Boeing's Oklahoma locations." Siskin Declaration, Dkt. # 171, at ¶ 3. Siskin conducted the investigation in order to "determine whether disparities existed in various categories between female and male employees and whether it was possible to demonstrate these disparities on a class-wide basis." *Id.* In his study Siskin utilized documents "describing in part the data and employment systems used by Boeing." *Id.* at ¶ 4. The documents and data upon which Siskin relied contained "detailed information about Boeing's compensation and overtime practices." *Id.* at ¶ 5. Siskin states that the information he received was the type that expert statisticians rely upon in forming opinions regarding employment-related practices and was sufficient to enable him to perform a reliable analysis. *Id.*

Boeing claims that Siskin's analyses are not relevant because they do not examine whether the statistical evidence supports commonality. Def. Motion to Exclude, Dkt. # 155, at 5–6. In support of this claim,

---

4. Female employees of Boeing, including Anderson, originally brought suit in the Western District of Washington. *See Beck v. Boeing,* 203 F.R.D. 459 (W.D.Wash.2001). The *Beck* plaintiffs eventually moved to certify a class consisting of certain female employees from Puget Sound, Wichita, St. Louis, and Long Beach, *Id.* at 461. The *Beck* court certified only the Puget Sound employees as a class. *Id.* at 468. The *Beck* court transferred venue of the individual claims of the non-Puget Sound plaintiffs to their respective jurisdictions, including the District of Kansas and, in the case of Anderson, the Northern District of Oklahoma.

The plaintiffs transferred to the District of Kansas filed a class action titled *Dean. v. Boeing.* On April 24, 2003, the *Dean* court granted class certification on the disparate impact claims. 2003 U.S. Dist. LEXIS 8787, at *67. On December 10, 2003, the District of Kansas changed the case caption in *Dean* to *Carpenter, et. al., v. The Boeing Co.,* 2003 WL 22938048, at *1 (D.Kan. Dec.10, 2003). On February 24, 2004, the District of Kansas decertified class treatment of plaintiffs' salaried compensation claims and granted summary judgment to Boeing on the plaintiffs' overtime claim, Def. Notice of Supp. Authority, Dkt. # 190, *Carpenter* Order, at 24. Although the case has been restyled, the parties relied heavily on the original *Dean* certification order in their memoranda regarding class certification. Thus, for consistency and clarity the *Dean/Carpenter* case will hereinafter be referred to as *"Dean."*

Boeing cites to Siskin's deposition in which he stated:

> If you're asking the question is there statistical support for an allegation that there is a common practice, which is not the question that I was asked or addressing, then you would look at the pattern of results in each of the individual groups.

*Id.*, Siskin Depo., at 43. Later in the deposition, Siskin agreed that he was asked to assume, for factual purposes, that there is a common practice across the individual groups. *Id.* However, Boeing admits that plaintiffs "may attempt to prove commonality by showing the existence of some common question of law or fact other than a 'common practice.'" *Id.* at 6, n. 3. Boeing also argues that Siskin's analyses do not speak "clearly and directly to an issue in dispute in the case." *Id.* at 6, *citing Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1321 n. 17 (9th Cir.), *cert. denied*, 516 U.S. 869, 116 S.Ct. 189, 133 L.Ed.2d 126 (1995) ("*Daubert II*"). However, the Court is not applying the *Daubert* standard and thus, looks less at the relevance of the analyses and more at whether they are so fatally flawed as to be inadmissible as a matter of law.

Boeing argues the irrelevance of Siskin's studies because his aggregated results obscure the commonality analysis. Def. Motion to Exclude, Dkt. # 155, at 6–9. Boeing claims that Siskin's "presentation of aggregated results cannot show that Boeing has a common practice that is uniform across the proposed class, because such an analysis disguises whatever variability might exist across the years, locations, organizations, and groups of employees being studied." *Id.* at 7. Thus, Boeing claims Siskin's analyses "do not assist the court in answering whether the statistical evidence reveals consistent patterns of disparities that would support the existence of commonality." *Id.* Once again, Boeing assumes that the Court must analyze Siskin's testimony under the *Daubert* standard. Instead, the Court must determine only that Siskin's testimony is not so fatally flawed as to be inadmissible as a matter of law.

Boeing relies on *Abram v. United Parcel Serv. of Am., Inc.*, 200 F.R.D. 424, 431 (E.D.Wis.2001), to support its claim that Siskin's analyses do not assist the Court. In *Abram*, the court found that the aggregated statistics proffered by the plaintiffs did not show uniformity, and declined to consider the statistics as proof of commonality. *Id.* Plaintiffs claim that *Abram* is distinguishable because they are not offering "Siskin's compensation study as the exclusive proof of uniformity of practices." Pl. Resp. Br., Dkt. # 167, at 11. Plaintiffs claim that they also offer significant anecdotal and documentary evidence of such uniformity. *Id.* The Court is not persuaded by plaintiffs' explanation that this case is distinguishable from *Abram* because they offer additional evidence. The motion is to exclude Siskin's testimony regarding statistical studies, not the additional anecdotal and documentary evidence. However, the Court does find *Abram* distinguishable in a different and more important way. In *Abram* the court had set out in a prior opinion that, "the principal question, for certification purposes, is whether the plaintiffs can make an adequate statistical showing of a consistent pattern of [lower pay] within the class of African–American [full-time supervisors], both within their respective districts and nationally." 200 F.R.D. at 431, *quoting* Decision and Order, April 5, 2000, at 3. In this case the Court has not made any prior determination of the level at which the statistics must show a consistent pattern. The Court also has not demanded that plaintiffs compile statistics aggregated for all workers in Oklahoma and by site. In fact, Siskin has stated that "although there are 7 sites, no single site contains enough employees to be studied separately. We deleted those sites with too few persons to study and rolled up the remaining sites." Siskin Decl., Dkt. # 171, at ¶ 12. Also, unlike in *Abram*, the statistics offered by Siskin do appear to have been controlled for relevant, non-gender factors. *Compare id.* at ¶¶ 14–16, *with Abram*, 200 F.R.D. at 431.

Plaintiffs assert that their memorandum in support of class certification lists six common questions, not just a singular common practice. Pl. Resp. Br., Dkt. # 167, at 9, *citing* Pl. Motion for Class Certification, Dkt. # 127, at 32–33. Plaintiffs state that only

one of the six questions relates to common practices across Boeing sites. *Id.* Of the remaining five questions, plaintiffs claim that Siskin's compensation analyses are directly probative at least two of them. *Id.* Plaintiffs claim that the two common questions to which Siskin's analyses are relevant are "whether there are statistically significant gender disparities in salaried compensation in Oklahoma," and "whether Boeing's common practices caused disparities in pay adverse to its female employees." *Id.* Plaintiffs allege that because Siskin's analyses are relevant to two common questions, they are not so fatally flawed as to be inadmissible as a matter of law. *Id.* at 11.

■ Based on Siskin's education, experience, and descriptions of the methodology utilized in conducting his statistical analyses of compensation at Boeing in Oklahoma, the Court finds that his testimony is not so fatally flawed as to be inadmissible as a matter of law. Siskin states that he used methods that are generally accepted in his field and have been approved by many courts in employment discrimination cases, including gender discrimination class actions. Siskin Decl., Dkt. # 171, at ¶ 5. Siskin found that "an analysis in salaries between all male and female salaried employees can be conducted on a class-wide basis. It is also my opinion that applying these well-accepted techniques to Boeing's data reveals disparities common across a class of non-management level salaried employees." The Court finds that Boeing has presented no evidence that Siskin is an unqualified expert or that his methodology and analyses of compensation at Boeing's Oklahoma facilities are so fatally flawed as to be inadmissible as a matter of law.

■ Boeing also argues that the Court should exclude Siskin's testimony with respect to hourly overtime. Def. Motion to Exclude, Dkt. # 155, at 10. Boeing claims that Siskin's analysis of the alleged disparity in overtime hours worked by females at Boeing in Oklahoma is unreliable because he did not account for "overtime offered to an employee but which he or she refused." *Id.* Siskin stated at his deposition that "to the extent that females disproportionately refuse overtime that's offered to them, that could

explain some or all of this disparity. I don't know." *Id.*, Siskin Depo., at 126. Thus, Boeing claims that "the failure by Dr. Siskin to account for obviously relevant and available data on overtime offers and refusals renders his overtime results unreliable." *Id.* at 11.

Boeing cites several decisions, outside the Tenth Circuit, which require experts to consider major variables that could affect their findings. *See Blue Dane Simmental Corp. v. American Simmental Ass'n,* 178 F.3d 1035, 1040–41 (8th Cir.1999); *Tagatz v. Marquette Univ.,* 861 F.2d 1040, 1045 (7th Cir.1988); *Lippe v. Bairnco Corp.,* 288 B.R. 678, 686 (S.D.N.Y.2003). However, all of these cases relate to statistical evidence proffered under the *Daubert* standard, rather than statistical evidence in a class certification context.

In addition to discussing the inapplicability of the cases cited by Boeing, plaintiffs also claim that "Boeing's criticism goes to the weight, not admissibility, of Siskin's testimony." Pl. Resp. Br., Dkt. # 167, at 11. Next, plaintiffs claim that "Siskin properly did not consider this evidence [overtime refusals] because Boeing's own witness admitted that it is hopelessly rife with inaccuracies." *Id.* Plaintiffs allege that Boeing may not attack plaintiffs' statistical analysis by claiming that a variable for which it does not collect data is missing from the challenged analysis. *Id.* at 13, *citing McReynolds v. Sodexho Marriott Servs.,* 208 F.R.D. 428, 444 n. 25 (D.D.C. 2002) ("plaintiffs should not be penalized for defendant's lack of centralized controls and recordkeeping"). Plaintiffs claim that Richard Harank (whose position is not of record) conceded that: (1) sometimes the managers write down the wrong number on forms for overtime hours offered, Pl. Motion for Class Certification, Dkt. # 127, Ex. 49, at 152; (2) some of the forms were not filled out correctly, *id.* at 152, 161–62; and (3) that there is no way to tell from the forms whether the managers were filling out the form at the time they offered the overtime, *id.* at 162. Plaintiffs acknowledge that Boeing is entitled to challenge Siskin's testimony at trial where they can present testimony on the unreliability of Boeing's overtime refusal data. *Id.* However, plaintiffs claim that Boeing offers

no authority that Siskin's opinion finding severe disparities adverse to women in overtime should be disregarded at the class certification stage because refusal rates were not considered. The Court finds that, as evidence that hourly females at Boeing in Oklahoma worked fewer overtime hours than males, Siskin's testimony is not so fatally flawed as to be inadmissible as a matter of law.

For the reasons stated above, Defendants' Motion to Exclude Expert Testimony of Dr. Bernard Siskin (Dkt.# 155) is denied.

## II.

Plaintiffs Emma Lee Anderson ("Anderson"), Renna Banks ("Banks"), Florence "Beth" Dobbs ("Dobbs"), Katherine Sanders ("Sanders") and Daryl Dee Wheeler ("Wheeler") move the Court to certify their claims for class treatment pursuant to FED. R. CIV. P. 23. Pl. Motion for Class Certification, Dkt. # 127, at 1. Plaintiffs seek to certify claims on behalf of:

> All non-executive salaried and hourly female employees, excluding women who have signed Mutual Agreements to Arbitrate Claims With Rockwell International Corporation or Boeing North American, Inc., who have been employed in Boeing facilities in Oklahoma at anytime from January 1, 1997 to the present.

*Id.* Plaintiffs propose two subclasses: (1) the "Salary Subclass" consisting of all non-executive salaried female employees; and (2) the "Overtime Subclass" consisting of hourly female employees. *Id.* at 5.

Plaintiffs allege that Boeing has engaged in a pattern or practice of discrimination against female employees at its Oklahoma facilities. *Id.* at 1. The plaintiffs claim that, as a result of the alleged pattern or practice, women employed in Oklahoma are paid less than men for doing the same work, and are assigned less overtime than men. *Id.* As class-wide relief, the proposed class representatives seek injunctive and equitable relief, backpay, and punitive damages. *Id.* at 5.

### A. *Standards for Class Certification*

"The trial court may certify a class only if, after rigorous analysis, it determines that the proposed class satisfies the prerequisites of Federal Rule of Civil Procedure 23(a)." *J.B. by Hart v. Valdez,* 186 F.3d 1280, 1287–88 (10th Cir.1999). In determining whether a class should be certified, the Court should not delve into the merits of the action. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). However, the Supreme Court has also recognized that consideration of the merits is sometimes necessary to Rule 23 analysis. *See General Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982); *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 469 n. 12, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978).

To achieve class certification, the moving party must satisfy the provisions of Fed.R.Civ.P. 23(a), which provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a). The four prerequisites to a class action are commonly referred to as numerosity, commonality, typicality, and adequacy of representation. *See, generally, Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 828 n. 6, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999). Each subclass must meet all four prerequisites. *Monarch Asphalt Sales Co., Inc. v. Wilshire Oil Co.,* 511 F.2d 1073, 1077 (10th Cir.1975). Plaintiffs have the burden of demonstrating that the requirements of Rule 23(a) have been satisfied. *Reed v. Bowen,* 849 F.2d 1307, 1309 (10th Cir.1988).

In addition to satisfying the prerequisites of Rule 23(a), the named plaintiffs must also satisfy the requirements of Rule 23(b), which defines the categories of class actions maintainable. Plaintiffs allege that the second or third category applies to this action. Pl.

Motion for Class Certification, Dkt. # 127, at 37, 43. Under FED. R. CIV.P. 23(b)(2) an action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; . . . ." FED. R. CIV.P. 23(b)(3) permits certification if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class actions is superior to other available methods for the fair and efficient adjudication of the controversy."

The Tenth Circuit has stated that "if there is to be an error made, let it be in favor and not against the maintenance of the class action, for it is always subject to modification should later developments during the course of the trial so require." *Esplin v. Hirschi*, 402 F.2d 94, 99 (10th Cir.1968) (citation omitted). Given the evidence provided to date, as well as the recent ruling in *Dean*, the Court is mindful that the Tenth Circuit recently reiterated the ability of the trial court to modify or decertify a class at any time before final judgment. *Weinman v. Fid. Capital Appreciation Fund (In re Integra Realty Res., Inc.)*, 354 F.3d 1246, 1261 (10th Cir. 2004).

## B. *Requirements of Rule 23(a)*

### 1. *Numerosity*

Plaintiffs claim they represent over four hundred women employees at Boeing's Oklahoma facilities. Siskin Decl., Dkt. # 171, at Tables I–7. Plaintiffs do not provide numbers for each putative subclass. However, reference to the tables indicates there are an average of one hundred and forty-six salaried female employees, *see id.* at Tables 15 and 16, and an average of one hundred and seventeen hourly female employees, *see id.* at Tables 1–7. Although it is not clear from the record, it is assumed that the numbers utilized in Siskin's tables include plaintiffs whose cases have been stayed pending arbitration. While the Court is uncertain of the exact number of potential members of the

class, or each subclass, the numbers are sufficient to meet the numerosity requirement. Further, Boeing does not dispute that plaintiffs satisfy the numerosity requirement. *See* Def. Resp. Br., Dkt. # 156, at 27–54. The Court finds that the putative subclasses are so numerous that joinder of all members is impracticable.

### 2. *Commonality*

■ The second requirement, commonality, is a source of contention between the parties. Rule 23(a)(2) does not require that plaintiffs establish that all facts or legal issues are common to the class. It requires only a single question of law or fact common to the class. *See J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1288 (10th Cir.1999); *see also Realmonte v. Reeves*, 169 F.3d 1280, 1285 (10th Cir.1999). Plaintiffs contend that there are six common questions of law or fact:

1. Whether there are statistically significant gender disparities in salaried compensation and overtime assignments;

2. Whether Boeing's senior officials had or have knowledge of long-term gender disparities in salaried compensation and overtime assignments;

3. Whether Boeing failed to correct gender disparities in salary and overtime despite knowledge of their existence;

4. Whether Boeing's practices and policies allow managers to use subjective criteria in making decisions concerning salaried compensation and overtime assignments;

5. Whether Boeing allows subjective decision-making with the knowledge that it perpetuates intentional discrimination and/or disparately impacts women; and

6. Whether Boeing has deliberately implemented minimal remedies to gender-based pay disparities rather than addressing their root causes through changes in personnel, polices and/or practices.

Pl. Motion for Class certification, Dkt. # 127, at 32–33. Plaintiffs allege that they can establish commonality in at least four ways: (1)

statistical evidence of discrimination against women in salaried compensation and assignment of overtime; (2) a pattern or practice of intentional discrimination due to Boeing's failure to take any action to eliminate discrimination that was reported since at least 1999; (3) studies by Boeing of salary disparities done on a class-wide basis without analyzing salary decisions on an employee-by-employee basis; and (4) anecdotal and expert evidence that Boeing's policies have allowed managers to make subjective decisions with respect to salaried compensation and overtime assignments. *Id.* at 31–32.

Plaintiffs claim that the statistical evidence of discrimination against women in salaried compensation and assignment of overtime alone satisfies their burden. *Id.* at 31. Siskin found, with respect to the women in the putative salaried subclass,[5] that

> there were statistically significant disparities adverse to non-management, salaried females in March 1997 and March 1998. The disparities continue through July 2002 (with the exception of March 2002), although at a non-statistically significant level. The data and analysis demonstrates that the disparities exist on a group-wide basis, . . . .

Siskin Decl., Dkt. # 171, at ¶ 19. Siskin concludes that the "fact that the disparities adverse to women dropped below a statistically significant level after 1998 does not contradict the existence of a pattern of discrimination." *Id.* at ¶ 21.

At the hearing on class certification, plaintiffs claimed that Boeing cannot avoid liability simply by reducing the size of the disparities to below a statistically significant level, *citing Rowe v. General Motors Corp.*, 457 F.2d 348, 359 (5th Cir.1972). Specifically, plaintiffs claim that the existence of disparities below two standard deviations does not rule out disparate impact. *E.g., E.E.O.C. v. American Nat'l Bank*, 652 F.2d 1176, 1192 (4th Cir.1981). In reference to *Castaneda v. Partida*, 430 U.S. 482, 497 n. 17, 97 S.Ct.

1272, 51 L.Ed.2d 498 (1977), which noted that a standard deviation above two units automatically eliminates chance, the Fourth Circuit has stated "[t]he converse of this that standard deviations of not 'more than two or three' necessarily exclude discriminatory design as the cause is nowhere implied. Nor could it be. . . ." *American Nat'l Bank*, 652 F.2d at 1192. "The Tenth Circuit has cited *American Nat'l Bank* in holding, 'statistics that are insignificant to the social scientist may well be relevant to a court.'" Def. Notice of Supp. Authority, Dkt. # 190, *Carpenter* Order, at 8 n.4, *quoting Pitre v. Western Elec. Co., Inc.*, 843 F.2d 1262, 1269 (10th Cir.1988).

Boeing argues that plaintiffs' statistical evidence fails to support commonality because Siskin's studies "included only 30% of the total population in Oklahoma." Def. Resp. Br., Dkt. # 156, at 32. Boeing argues that results applicable to such a small percentage of the population does not constitute evidence of commonality. *Id.* In addition, Boeing claims that Siskin's results do not support commonality because "his analyses of employees at the JAG [Job Aggregation Group] level, rather than aggregated across different job groups, reveal no adverse patterns."[6] *Id.* Boeing alleges that in "some JAGs in some years, women are paid less than expected, but in some JAGs in some years, women are paid more than expected." *Id.*

■ Plaintiffs assert that Boeing's argument with respect to the percentage of the population is misplaced because of the small size of Boeing's Oklahoma facilities. Pl. Reply Br., Dkt. # 170, at 12 n.18. Plaintiffs argue that the Tenth Circuit has held that, if such small samples were rejected, "the tendency would be to deny employees in small plants the type of protection the civil rights statutes afford." *Id., quoting Chicano Police Officer's Ass'n v. Stover*, 526 F.2d 431, 439 (10th Cir.), *vacated on other grounds*, 426 U.S. 944, 96 S.Ct. 3161, 49 L.Ed.2d 1181

---

**5.** Plaintiffs state that they intend their motion for class certification to "be limited to non-management salaried and hourly employees, excluding engineers. Thus, they do not seek certification of a class of female managers." Pl. Reply Br., Dkt. # 170, at 12 n.18.

**6.** Siskin's Declaration includes tables that analyze statistics by Job Aggregation Group and aggregated across job groups. Siskin Decl., Dkt. # 171, Tables 8–14.

(1976). Plaintiffs also allege that "Boeing's contention that the Court should analyze disparities at the job grouping level, rather than by aggregating results, is contrary to proper statistical methods." *Id.* at 12. Plaintiffs claim that "dividing a statistical analysis into small groupings of data prevents analyses of large enough samples to derive meaningful results and skews analyses away from evidencing discrimination." *Id.* Although the Court finds plaintiffs' explanations somewhat inapposite, this apparent inconsistency is in no way dispositive. Siskin found, with respect to the statistical analysis of salaried employees in non-management and non-engineer roles, statistically significant disparities adverse to women in 1997 and 1998. In addition, he continued to find disparities that were adverse to women through July 2002 (with the exception of March 2002) in the range of .73–1.44 units of standard deviation. The Court finds that, although Boeing's "critique of the Class Plaintiffs' evidence may prove fatal at the merits stage, the Class Plaintiffs need not demonstrate at this stage that they will prevail on the merits." *Caridad v. Metro–North Commuter R.R.*, 191 F.3d 283, 292 (2d Cir.), *cert. denied* 529 U.S. 1107, 120 S.Ct. 1959, 146 L.Ed.2d 791 (2000).

With respect to overtime statistics, Siskin found that "Boeing's data shows a consistent and highly statistically significant pattern adverse to females as a group in all aspects of overtime for hourly workers between 1998 and 2003, whether measured by percent who worked overtime, overtime hours worked, overtime hours paid, or overtime dollars paid." Siskin Decl., Dkt. # 171, at ¶ 24. Boeing claims that Siskin's overtime studies did not account for the contractually required processes and rules for offering overtime. Def. Resp. Br., Dkt. # 156, at 33. Boeing argues that because Siskin's studies disregarded overtime offered to an employee that he or she refused, the studies are "so incomplete as to be inadmissible as irrelevant." *Id., citing Bazemore v. Friday*, 478 U.S. 385, 400 n. 10, 106 S.Ct. 3000, 92 L.Ed.2d 315 (1986). Although some regression analyses are so incomplete as to be inadmissible as irrelevant, the Supreme Court did not find that simply because petitioners' analysis did not include all measurable variables the analyses were unacceptable as evidence of discrimination. 478 U.S. at 400, 106 S.Ct. 3000. In fact, *Bazemore* noted that "[w]hile the omission of variables from a regression analysis may render the analysis less probative than it otherwise might be, it can hardly be said, absent some other infirmity, that an analysis which accounts for the major factors 'must be considered unacceptable as evidence of discrimination.' " *Id., quoting Bazemore v. Friday*, 751 F.2d 662, 672 (4th Cir.1984). Therefore, the Court finds the holding in *Caridad* is equally applicable to Boeing's critique of plaintiffs' statistical analysis of assignment of overtime to women. Boeing's objection to plaintiffs' statistical evidence regarding overtime is more appropriate at the merits stage. *See, e.g.*, Def. Notice of Supp. Authority, Dkt. # 190, *Carpenter* Order, at 20.

■ Siskin found disparities in salary for older female employees at Boeing in Oklahoma, some of which were statistically significant. Siskin also found statistically significant disparities in the amount of overtime hours worked by female employees at Boeing in Oklahoma. The Court does not find Siskin's statistical analyses fatally flawed. Thus, the analyses are not inadmissible at the class certification stage. The Court does not find that plaintiffs' statistical evidence presently fails to support commonality. However, the Court also does not find that the statistical evidence alone establishes commonality. Plaintiffs' statistics may prove fatal at the completion of discovery on the merits, or at the summary judgment stage. Therefore, the Court addresses plaintiffs' other questions of law or fact alleged to support commonality.

Plaintiffs claim that commonality is established because "Boeing executives received reports of discrimination since at least 1999 and failed to do anything to eliminate it." Pl. Motion for Class Certification, Dkt. # 127, at 31. Plaintiffs allege that "Boeing's knowledge of persistent gender-based pay disparities and its failure to act until forced by OFCCP [Office of Federal Contract Compliance Programs] investigations will be com-

mon to all Class members." [7] *Id.* Boeing claims that "[v]irtually all of the exhibits [plaintiffs] offer for this false proposition have nothing to do with Oklahoma...." Def. Resp. Br., Dkt. # 156, at 34, *citing* Berman Decl., Dkt. # 138, Exs. 4, 5, 10, 12, 13, 15, and 16. Exhibit 4 is a memorandum that provides an update on a meeting between the Region III Director of the U.S. Department of Labor's Office of Federal Contract Compliance Programs ("OFCCP") and Counsel for Boeing Defense and Space Group. Berman Decl., Dkt. # 138, Ex. 4. The memorandum states that

3) even though there is "very serious liability here," DeBray set out the following "win-win-win proposition"–

 a. OFCCP will accept Boeing January 23 response, thus disposing of all issues relating to all pay codes except New Salary Payroll grades 48–51 (which is not addressed in detail in Boeing's response), if

 b. Boeing and the OFCCP can negotiate a settlement relating to those 4 NSP grades whereby, while he feels that the number should be considerably higher, Boeing makes a settlement payment "in the mid-seven figures; ..."

*Id.* Exhibit 5 is a letter from OFCCP to a Boeing executive. Berman Decl., Dkt. # 138, Ex. 5. Boeing claims that the exhibits relate only to facilities in Philadelphia, Pennsylvania; Huntsville, Alabama; and Long Beach, California. Def. Resp. Br., Dkt. # 156, at 34. While it is unclear from the documents whether Exhibits 4 and 5 relate to Oklahoma facilities, plaintiffs do not rebut Boeing's claim. *See* Pl. Reply Br., Dkt. # 170, at 22. Exhibit 10 is a draft "Outline of Compensation Issues" dated April 28, 1998, which was prepared for Boeing at an attorney's request. Berman Decl., Dkt. # 138, Ex. 10, at 1. The outline states that "[d]isparities in compensation are not localized," and "[m]ost regions have some disparity." *Id.* Exhibits 12 and 13 are agendas for meetings of the Diversity

Salary Assessment Team ("DSA") and its sub-team, the Process Assessment Team ("PAT"). Berman Decl., Dkt. # 138, Exs. 12–13. Exhibit 12 shows that Boeing was evaluating on a national level whether "[f]or non-heritage Boeing, do similarly situated women and minorities have lower starting salaries?" Berman Decl., Dkt. # 138, Ex. 12, at 2. Also, Exhibit 13 appears to show that at the national level Boeing noted that "starting salaries for experienced new hires are generally lower for women and minorities." Berman Decl., Dkt. # 138, Ex. 13, at 3. Boeing states that the "the influence of Oklahoma practices on these observations, if any, was not identified." Def. Resp. Br., Dkt. # 156, at 34. Once again, it is unclear from the documents to what extent Exhibits 12 and 13 relate to Oklahoma facilities, and plaintiffs do not rebut Boeing's argument. *See* Pl. Reply Br., Dkt. # 170, at 22. Exhibits 15 and 16 are reports concerning gender-based salary disparities that were sent to Boeing executives. Pl. Motion for Class Certification, Dkt. # 127, at 12. Plaintiffs claim that by 1999, "Boeing had started including Tulsa in these studies, and they showed statistically significant pay disparities adverse to women." *Id.* Boeing claims that its Oklahoma facilities are mentioned on only four pages, and that each time an Oklahoma facility is mentioned, there is no result with statistically significant gender disparities. Def. Resp. Br., Dkt. # 156, at 34–35. As with the previous exhibits, it is unclear from the documents to what extent Exhibits 15 and 16 relate to Oklahoma facilities, and plaintiffs do not rebut Boeing's argument. *See* Pl. Reply Br., Dkt. # 170, at 22.

Boeing also alleges that plaintiffs "erroneously assert that Boeing's 1999 agreement with the OFCCP also evidences gender discrimination." Def. Resp. Br., Dkt. # 156, at 35. In support of this claim Boeing engages in a discussion of the merits. *Id.* Boeing also attempts to discredit an April 1996 self-audit of Boeing's Tulsa facility (which at the time was owned by Rockwell International) that plaintiffs cite for the proposition that there

---

7. The Court assumes that plaintiffs meant that Boeing's knowledge of persistent gender-based pay disparities is common to all putative *salary subclass* members. Thus, the Court's discussion of commonality with respect to reports received by Boeing executives applies to that subclass only.

was a "dramatic difference in the rates of pay of males and females, with an overwhelming percentage of males receiving greater pay." *See* Pl. Motion for Class Certification, Dkt. # 127, at 11, *citing* Berman Decl., Dkt. # 138, Ex. 7, at TBC 05006966. Without addressing all of Boeing's concerns specifically, the Court notes that contrary to Boeing's assertion, the audit did analyze salaries of men versus women without regard to race. Berman Decl., Dkt. # 138, Ex. 7, at TBC 05006966.

Although plaintiffs do not rebut Boeing's contention that the exhibits are not directly related to Oklahoma facilities, they argue that they "need only show that executives knew their policies were fostering discrimination, and that this discrimination surfaced in pay disparities against Class members in Oklahoma." Pl. Reply Br., Dkt. # 170, at 22, *citing Beck v. Boeing,* 203 F.R.D. 459, 466 (W.D.Wash.2001), *aff'd in part & rev'd in part,* 60 Fed.Appx. 38 (9th Cir.2003). The court in *Beck* held that certification was proper for Boeing employees at Puget Sound based upon plaintiffs' theory of the case which was "premised on their ability to prove that, at the highest levels of the corporation, Boeing knew that systemic gender-based discrimination was occurring and did nothing (or did not do enough) to put an end to it." *Beck,* 203 F.R.D. at 466. In *Beck,* the court found that the commonality requirement was satisfied based upon the statistical evidence regarding Puget Sound employees, not based upon plaintiffs' theory of knowledge by Boeing executives. *Id.* at 464. It is undeniable that plaintiffs in this case are arguing the corporate knowledge theory. Pl. Motion for Class Certification, Dkt. # 127, at 31–33. The Court finds that the fact that Boeing executives received reports of discrimination at a company-wide level and allegedly failed to do anything to eliminate it does not establish by itself commonality for the proposed class of Oklahoma plaintiffs because it is unclear whether those reports relate to Oklahoma facilities. However, plaintiffs also allege that the reports, combined with internal class wide studies and centralized policy statements, establish commonality.

*See* Pl. Motion for Class Certification, Dkt. # 127, at 31–32.

Plaintiffs claim that "Boeing's studies of salary disparities, done on a Class-wide basis without analyzing salary decisions on an employee-by-employee basis, demonstrate that commonality exists in this case." Pl. Motion for Class Certification, Dkt. # 127, at 31. In support of their claim, plaintiffs note that in *Wagner v. NutraSweet Co.,* 170 F.R.D. 448, 450–51 (N.D.Ill.1997), the court found commonality based in part on its finding that the employer itself had studied salary decisions on a company-wide basis. In *Wagner,* unlike the case at hand, the class certified appears to be a company-wide (as opposed to regional) class. *Id.* at 449 ("All women employed by NutraSweet as directors, managers, or in other positions at Grades 26 and above (or equivalent grade) at NutraSweet's non-manufacturing facilities...."). Boeing claims that plaintiffs' argument that it treated its own workforce as a class was rejected in *Beck* when the court declined to certify a nationwide class. Def. Resp. Br., Dkt. # 156, at 36, *citing* 203 F.R.D. at 468.

Plaintiffs also claim that "in centralized policy statements, Boeing made clear that it is 'responsible for the employment practices of all its subparts.'" Pl. Motion for Class Certification, Dkt. # 127, at 32, *quoting Staton v. Boeing Co.,* 327 F.3d 938, 954 (9th Cir.2003). The Ninth Circuit noted that Boeing issued "an 'Equal Employment Opportunity' policy in July 1998, applicable to all Boeing organizations. This document stated that the 'primary responsibility for implementing this policy rests with the senior management of the company.'" *Id.; see also* Berman Decl., Dkt. # 138, Ex. 57, at 2. Further, plaintiffs note that Boeing touts the centrality of its policies that govern compensation. In May 1998, Boeing issued a document entitled "Salary Planning Processes" which stated "[t]he salary planning processes used for the company's four salaried payrolls are fundamentally very similar, based on a single company-wide *compensation philosophy* for salaried payrolls...." Berman Decl., Dkt. # 138, Ex. 33 (underline in original). In addition, since February 1999, Boeing corporate headquarters has issued "PAE Review.

The Salary Planning Process A Management Guide." *Id.,* Exs. 34–37. The management guides apply "to all salaried, non-executive employees of The Boeing Company and its United States domestic wholly owned subsidiaries." *See, e.g., id.,* Ex. 34, at 3. Finally, plaintiffs argue that Boeing has common overtime policies in Oklahoma. Pl. Reply Br., Dkt. # 170, at 21. Plaintiffs note that Boeing even admits that the "UAW [United Automobile, Aerospace and Agricultural Implement Workers of America] CBA's [Collective Bargaining Agreements] applicable in Tulsa and McAlester ... [and t]he various IAM [International Associations of Machinists and Aerospace Workers, AFL–CIO] CBA's applicable in Boeing's operations at Tinker AFB [Air Force Base] and Vance AFB have similar provisions...." Def. Resp. Br., Dkt. # 156, at 45. Plaintiffs' side-by-side comparison of the operative sections of the collective bargaining agreements governing hourly workers in Oklahoma provides strong evidence they were all subject to common practices and policies. *Compare* Berman Decl., Dkt. # 138, Ex. 47, at 126 *with id.,* Ex. 51 (BAC 10038).[8]

The centralized policy statements are also significant in terms of plaintiffs' final claim that commonality exists because they have provided anecdotal and expert evidence that Boeing's policies have allowed managers to make subjective decisions in determining salary and assigning overtime. Pl. Motion for Class Certification, Dkt. # 127, at 32. Plaintiffs claim that managers "are given broad discretion to make subjective decision in classifying employees setting employee's initial salaries and determining annual salary increases." *Id.* at 14. At the hearing on class certification, plaintiffs elaborated on their claim by asserting that Boeing's own documents show that four common compensation policies caused disparities adverse to women. The four policies that plaintiffs claim establish commonality, based upon subjective decision-making by managers, are:

1. Boeing bases starting salaries in part on candidates' salary history and allows candidates to negotiate regarding their starting salaries, and therefore starting salaries for women are less than for men. Berman Decl., Dkt. # 138, Ex. 12, at 3, 4; *id.,* Ex. 13, at APT 02131.

2. Uniform fund generation: in annual salary reviews, all salary review groups had the same percentage allocation of the annual salary fund for distribution, resulting in women who were concentrated in lower paid groups on average receiving lower raises than similar men. *Id.,* Ex. 13, at APT 02131.

3. Raise management: during the annual salary review process, managers focused not on the size of the employee's salary, but on the size of the recommended raise, exacerbating existing disparities. *Id.; id.,* Ex. 14, at TBC 01209954.

4. Boeing did not monitor and hold managers accountable for the gender impacts of salary planning decisions. *Id.,* Ex. 13, at APT 02131; *id.* Ex. 14, at TBC 01209963.

Plaintiffs also claim that "because they have been improperly classified [due to subjective decision-making] they are paid less than men doing similar work but who were favored with a higher job classification." Pl. Motion for Class Certification, Dkt. # 127, at 16.

Plaintiffs claim that the combination of statistically significant disparities and evidence of policies that permit subjective decision-making satisfies the commonality and typicality requirements. Pl. Reply Br., Dkt. # 170, at 18, *citing Hawkins v. Bounds,* 752 F.2d 500, 503 (10th Cir.1985); *Bauer v. Bai-*

---

8. Boeing's hourly employees at its Tulsa facilities are members of UAW. "A single collective bargaining agreement has applied to all hourly employees at Boeing's Tulsa facilities at any given time during the Class period." Pl. Motion for Class Certification, Dkt. # 127, at 20, *citing* Berman Decl., Dkt. # 138, Exs. 47, 48. However, Boeing claims that an overtime subclass cannot include hourly employees at Boeing's Western Oklahoma facilities, all of whom belong to IAM. Boeing asserts that the subclass cannot include the IAM workers because "there is no named plaintiff who is represented by IAM, nor have plaintiffs identified any IAM-represented witnesses to support their hourly claims." The Court finds this argument unavailing as the policies regarding assignment of overtime are nearly identical for UAW and IAM workers.

lar, 647 F.2d 1037, 1045 (10th Cir.1981); *Rich v. Martin Marietta Corp.*, 522 F.2d 333, 348 (10th Cir.1975); *Dean*, 2003 U.S. Dist. LEXIS 8787, at *47. The Tenth Circuit cases to which plaintiffs cite provide support for the proposition that statistics plus subjective decision-making establishes a *prima facie* case of disparate impact, *see Hawkins*, 752 F.2d at 503, but do not discuss the proposition within the framework of establishing commonality at the class certification stage. In *Dean*, the court did state, in its discussion of commonality, that "the extensive human resource procedures detailed by Defendant, taken together with Plaintiffs' evidence as identified above, distinguishes this case from those in which the evidence indicated only isolated acts of subjective discretion exercised against individual plaintiffs." *Dean*, 2003 U.S. Dist. LEXIS 8787, at *47.

Boeing claims that plaintiffs can only establish commonality through subjective decision-making by showing that the practice at issue, here allegedly discriminatory salary compensation and assignment of overtime, is "*entirely* subjective." Def. Resp. Br., Dkt. # 156, at 38 (italics included), *citing Falcon*, 457 U.S. at 159 n. 15, 102 S.Ct. 2364. Boeing alleges that "there are a myriad of objective factors that managers use in making employment decisions and managers are guided in the use of subjective factors." *Id.* at 38–39. However, Boeing lists these objective criteria as "budgetary limits, business unit metrics, market forces, and other objective and subjective factors." *Id.* at 41. The Court finds this list of "objective factors" vague and is unconvinced that it defeats plaintiffs' claim regarding centralized policies which foster discriminatory subjective decision-making in order to establish commonality. While Boeing attempts to detail how "well-established" its guidelines are in order to avoid the claim of subjective decision-making, it belies its later claim that the highly individualized nature of the practice challenged though plaintiffs' Title VII disparate impact claim defeats commonality. *Compare id., with id.* at 52. Finally, as plaintiffs point out, *Falcon's* requirement of "entirely" subjective is not appropriate in this case. Pl. Reply Br., Dkt. # 170, at 18 n.24. In *Staton*, the Ninth Circuit noted that, "as we read *Falcon*, it does not generally ban all broad classes but rather precludes a class action that, on the basis of one form of discrimination against one or a handful of plaintiffs, seeks to adjudicate all forms of discrimination against all members of a group protected by Title VII, § 1981 or a similar statute." 327 F.3d at 955. The Court finds that in this case the plaintiffs and circumstances are not comparable to those in *Falcon* because plaintiffs have experienced the types of discrimination allegedly experienced by the proposed class.

 Based upon the evidence and authorities discussed above, the Court finds that plaintiffs have established commonality for the salary subclass based upon common questions of fact regarding

1. Whether Boeing failed to correct gender disparities in salary despite knowledge of their existence; and

2. Whether Boeing allows subjective decision-making with the knowledge that it perpetuates intentional discrimination and/or disparately impacts women.

The Court also finds that plaintiffs have established commonality for the overtime subclass based upon common questions of fact regarding

1. Whether Boeing's practices and policies allow managers to use subjective criteria in making decisions concerning overtime assignments; and

2. Whether there are statistically significant gender disparities in overtime assignments.

Lastly, the Court finds that a common issue of law exists for both subclasses as to whether the intentional discrimination and/or disparate impact plaintiffs allege violated Title VII.

### 3. *Typicality*

 Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The typicality standard does not require that every member of the class need be in an identical situation as the named plaintiffs. *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir.1988). However, "a class repre-

sentative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *East Texas Motor Freight Sys., Inc. v. Rodriguez,* 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977) (citations omitted).

Plaintiffs claim that the standards for typicality are met because "they share similar complaints" with absent class members; "they sue under the same legal theories" (Title VII, LMRA § 301 (for the overtime subclass), and breach of implied contract (for the salary subclass)); and "they seek the same remedies" (injunctive relief, backpay, and punitive damages). Pl. Motion for Class Certification, Dkt. # 127, at 34. In addition, plaintiffs allege that their anecdotal evidence shows typicality. *Id.* at 35. In support of typicality on behalf of the salary subclass, plaintiffs Anderson and Sanders state that they have been paid significantly less in salaries than their male counterparts, Anderson Decl., Dkt. # 124, at ¶¶ 6–10, Sanders Decl., Dkt. # 117, at ¶ 2. On behalf of the overtime subclass plaintiffs Dobbs, Wheeler, and Banks, as well as putative class member Billie Kitch ("Kitch"), state that they have consistently received less overtime than their male-co-workers. Dobbs Decl., Dkt. # 119, at ¶¶ 2–4; Wheeler Decl., Dkt. # 116, at ¶¶ 7–13; Banks Decl., Dkt. # 123, at ¶¶ 2–8; Kitch Decl., Dkt. # 121, at ¶¶ 5–8. Plaintiff's also claim typicality is established by reiterating their allegations regarding Boeing's internal class-wide studies showing significant gender-based disparities existing in pay for Boeing employees in Oklahoma, and that subjective decision-making by managers has harmed a class of women. Pl. Motion for Class Certification, Dkt. # 127, at 35–36. Finally, plaintiffs claim that the statistical analyses provided by Siskin demonstrate typicality. *Id.* at 34. The Court reaches its decision on typicality independently of Siskin's opinions.

Boeing claims that typicality cannot exist because plaintiffs and the proposed class members are employees who span diverse organizations or operations creating differ-

ently situated women. Def. Resp. Br., Dkt. # 156, at 28. In support of this claim Boeing alleges that its Oklahoma operations include diverse organizational structures and distinct geographical locations. *Id.* Boeing also claims that the "the lack of centralized decision-making throughout Boeing's Oklahoma facilities defeats" typicality. *Id.* at 39. Boeing claims that when plaintiffs allege that its employment practices are subjective they admit that Boeing "pursues a decentralized management structure in which the vast majority of employment decisions are determined by direct supervisors and next level managers with no actual influence from higher management." *Id.* at 40, *quoting Lott v. Westinghouse Savannah River Co.,* 200 F.R.D. 539, 559 (D.S.C.2000). In addition, Boeing claims that plaintiffs' declarations actually show that their claims are atypical. *Id.* at 46. In support of this claim, Boeing alleges that resolution of plaintiffs' salary and overtimes claims would require an individualized inquiry. *Id.* at 47, 49. Not only is Boeing's discussion in support of this claim a mere attempt to argue the merits of plaintiffs' claims, but also it includes only extraneous information about plaintiffs Kellione, Maxwell, and Sturm, whose claims are currently stayed *Id.* at 47–48. Lastly,[9] Boeing alleges that plaintiffs' statistical evidence does not support typicality because it does not show common patterns of differences adverse to women during the relevant time period. *Id.* at 29. Because the Court does not reach its decision on typicality based on Siskin's opinions, this objection is moot.

■ The Court finds that plaintiffs' claims are typical of the putative salary and overtime subclasses. Like members of those subclasses, plaintiffs are or were female employees of Boeing's Oklahoma operations, and they are or were paid either a salary or an hourly wage. Plaintiffs' putative subclasses do not include employees who have signed a mutual arbitration agreement. Plaintiffs have submitted their own declarations alleging acts of gender discrimination and/or disparate impact in compensation and overtime.

---

9. Although Boeing also alleges that plaintiffs "do not challenge a single, uniformly applied policy" and that their legal theories do not support a finding of typicality, the Court has already noted Boeing's centralized policies which plaintiffs have challenged. *Supra,* at II, B, 2.

The Court finds that these are the same claims as are alleged in the class complaint and plaintiffs' legal theories are the same as the subclass legal theories. In addition, plaintiffs have submitted a declaration from a non-named female employee of Boeing, Kitch, who also alleges gender discrimination. The Court also finds that the fact that plaintiffs in the overtime subclass belonged to different unions and worked under different CBAs is not a bar to a finding of typicality considering the nearly identical policies governing assignment of overtime under the different CBAs. *Supra,* II, B, 2, n.9. Boeing's concerns with respect to plaintiffs' union membership and geographic locations are also unavailing with respect to typicality because of Boeing's admitted centralized salary policies.[10]

### 4. *Adequacy of Representation*

The final requirement of Rule 23(a) is adequacy of representation. "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Rutter & Wilbanks Corp. v. Shell Oil Co.,* 314 F.3d 1180, 1187–88 (10th Cir.2002), *quoting Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir.1998). Boeing does not dispute either that plaintiffs' counsel can adequately represent the class or that there is no conflict of interest between named parties and the class.

The Court finds that plaintiffs have met the requirements of Rule 23(a).

### C. *Requirements of Rule 23(b)(2)*

Plaintiffs allege that Boeing's conduct violates "the disparate treatment, disparate impact, and pattern and practice principles of Title VII and the state anti-discrimination laws." First Amended Complaint, Dkt. # 150, at ¶ 116. The description in *Dean* of the application of Title VII to plaintiffs'

claims is equally applicable to plaintiffs' claims in this case:

Disparate treatment refers to intentional discrimination based on, in this case, gender, while disparate impact refers to facially neutral employment practices which fall more harshly on one group than another without justification based on business necessity. *See Int'l Brotherhood of Teamsters v. United States,* 431 U.S. 324 at 335 n. 15, 97 S.Ct. 1843, 52 L.Ed.2d 396 [(1977)]. "Pattern or practice" refers to class-wide (as opposed to individual) disparate treatment claims. *See Teamsters,* 431 U.S. at 336[, 97 S.Ct. 1843]; *Davoll v. Webb,* 194 F.3d 1116, 1147–48 (10th Cir. 1999); *Robinson v. Metro–North Commuter R.R. Co.,* 267 F.3d 147, 158–61 (2nd Cir.2001); *Allison v. Citgo Petroleum Corp.,* 151 F.3d 402, 409 (5th Cir.1998) *Segar v. Smith,* 238 U.S.App. D.C. 103, 738 F.2d 1249, 1265–66 (C.A.D.C.1984). Disparate impact claims are typically class wide because they are, like pattern-or-practice disparate treatment claims, "attacks on the systemic results of employment practices." *Segar,* 738 F.2d at 1267; 21A Fed. Proc. L.Ed., § 50.1028; *see also E.E.O.C. v. Horizon/CMS Healthecare[Healthcare] Corp.,* 220 F.3d 1184 at 1196 (10th Cir.2000) ("disparate impact claims are more analogous to pattern-or-practice [disparate treatment] claims than they are to [individual] disparate treatment claims").

2003 U.S. Dist. LEXIS 8787, at *57–58.

Rule 23(b)(2) was incorporated into the Federal Rules of Civil Procedure in 1966 "primarily to facilitate the bringing of class actions in the civil rights area." 7A Wright, Miller & Kane, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 1775 at 470 (2 ed.1986). However, the Advisory Committee Notes regarding the 1966 Amendment caution that "the subdivision does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages." The Tenth Circuit has elaborated, noting that

---

**10.** Additional concerns Boeing has about typicality with respect to the diversity of plaintiffs' union membership and geographic location become moot in light of the following section granting summary judgment on plaintiffs' LMRA § 301 and breach of implied contract claims.

[i]t is to be emphasized, however, that neither the rule nor any cases construing it hold that a request for class action relief in the form of back pay renders Rule 23(b)(2) inapplicable. True, the primary relief sought must be injunctive or declaratory, but it does not require that this be the *only* relief sought.

*Rich*, 522 F.2d at 341 (citation omitted).

### 1. *Pattern–Or–Practice Disparate Treatment Claim*

"Plaintiffs complain of a` pattern or practice that is generally applicable to the Class as a whole." Pl. Motion for Class Certification, Dkt.# 127, at 38. Specifically, plaintiffs allege that "Boeing has adopted policies that permit subjective decision-making procedures that have caused harm to women in the same way." *Id.* Therefore, plaintiffs seek certification pursuant to Rule 23(b)(2) with respect to claims for declaratory and injunctive relief, backpay, and punitive damages. *Id.* at 38, 39, and 41.

Plaintiffs claim that "injunctive relief—ending the unlawful practices that disparately treat and disparately impact them—is of paramount importance." Pl. Motion for Class Certification, Dkt. # 127, at 39. If plaintiffs prevail on their pattern or practice claims in the liability phase of trial, the Court may "devise prospective relief designed to assure that" Boeing eliminates its "discriminatory practices and the effects therefrom." *Teamsters*, 431 U.S. at 361 n. 47, 97 S.Ct. 1843. Plaintiffs cite *Teamsters* for the type of injunctive and declaratory relief they seek:

Such relief might take the form of an injunctive order against continuation of the discriminatory practice, an order that the employer keep records of its future employment decisions and file periodic reports with the court, or any other order "necessary to ensure the full enjoyment of the rights" protected by Title VII.

*Id.* at 361, 97 S.Ct. 1843.

■ Boeing's chief argument against certification under Rule 23(b)(2) is that "plaintiffs cannot show that declaratory or injunctive relief would be a meaningful class remedy because they fail to identify the relief they seek." Def. Resp. Br., Dkt. # 156, at 56. Thus, the Court outlines each plaintiff's declaration, as well as a declaration by a putative class participant (Kitch), with respect to the relief sought.

1. This Court should make sure Boeing changes and women and men are, in fact, treated equally. Management should be trained to actually treat men and women equally. More women should be able to get into the door and advance at Boeing. Women should have equal opportunity to advance to the top of Boeing's management and receive equal pay. Men should not be pre-selected over women for positions. Women at Boeing should not be forced to lose out on quality of life and retirement because they are paid less than men who perform the same work. Anderson Decl., Dkt. # 124, at ¶ 14.

2. This lawsuit is for all women who have been discriminated against at Boeing, not just me. The Court needs to ensure that Boeing makes these changes so that women are no longer afraid to do their job and be treated equally. Wheeler Decl., Dkt. # 116, at ¶ 16.

3. The court needs to make things right so that women are not discriminated against at Boeing. Ultimately, Boeing needs a watchdog, otherwise it will just revert back to discriminating against women. Dobbs Decl., Dkt. # 119, at ¶ 14.

4. Managers need to follow Company procedures and treat people with respect whether they are male or female. The discrimination against women in pay and training must end. Sanders Decl., Dkt. # 117, at ¶ 10.

5. With the Court's enforcement, I only hope my grandchildren can work at Boeing in the future and not be discriminated against simply because they are female. Banks Decl., Dkt. # 123, at ¶ 18.

6. The Court should eliminate the buddy system at Boeing that favors males. And the Court should force Boeing to equalize overtime for men and women. Kitch Decl., Dkt. # 121, at ¶ 13.

The Court recognizes that none of the plaintiffs identifies the injunctive relief sought with the pinpoint precision requested by Boeing. However, the Court finds that a sufficient description of the injunctive and declaratory relief sought has been expressed through plaintiffs' counsel's citation to *Teamsters*. In addition, the Court finds Boeing's contention unavailing at the class certification stage that, because Siskin's analyses neither found statistically significant disparities in compensation in the last four years nor analyzed the overtime offered, no injunctive or declaratory relief is needed. Whether or not injunctive and declaratory relief should be granted is simply a merits argument, irrelevant to whether such relief could be imposed if plaintiffs can prove a pattern or practice of discrimination or that Boeing's polices have had a disparate impact upon them—the decision to be made at the certification stage. *See, e.g., Butler v. Home Depot, Inc.*, 1997 WL 605754, at 16, 1997 U.S. Dist. LEXIS 16296, at *55 (N.D.Ca. Aug. 28, 1997). Based upon plaintiffs' declarations, arguments, and authorities, the Court finds that the members of the class, named and unnamed, would ultimately rather have Boeing enjoined from the type of conduct of which they complain than be compensated for the damage from any prior injurious conduct.[11] As a result, plaintiffs' motion for class certification with respect to Title VII claims for injunctive and declaratory relief, pursuant to Rule 23(b)(2), should be granted.

■ Plaintiffs also seek certification of claims for backpay under Rule 23(b)(2). Pl. Motion for Class Certification, Dkt. # 127, at 39. Boeing acknowledges that backpay is an "equitable remedy," Def. Resp. Br., Dkt. # 156, at 57, but claims that

> even if plaintiffs could establish some type of intentional or disparate impact class-wide discrimination, Boeing must be allowed to avoid an award of back pay... by showing as to each hypothetical class mem-

ber that, among other things, she was not entitled to the raise she sought because of poor work performance, or that an overtime opportunity allegedly denied to her was offered to another woman.

Def. Resp. Br., Dkt. # 156, at 58. However, the Tenth Circuit has affirmed the propriety of class wide backpay remedies. *See Pitre*, 843 F.2d at 1274–76; *Love v. Pullman Co.*, 569 F.2d 1074, 1077 (10th Cir.1978). *Boeing* does not address *Love* or *Pitre*. The Court finds that plaintiffs' motion for class certification with respect to Title VII claims for backpay for both the salary and overtime subclasses, pursuant to Rule 23(b)(2), should be granted.

■ Finally, plaintiffs seek certification under Rule 23(b)(2) for claims of punitive damages. Pl. Motion for Class Certification, Dkt. # 127, at 41. Boeing's main argument against certifying plaintiffs' punitive damages claims is that "such damages require inquiry into the individual circumstances of each class member." Def. Resp. Br., Dkt. # 156, at 59. However, the major focus in the punitive damages inquiry is "the degree of reprehensibility of the defendant's conduct." *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). As a result, a class claim for punitive damages

> is consistent with the notion that the focus of a (b)(2) action is the defendant's conduct toward persons sharing a common characteristic. Because the purpose of punitive damages is not to compensate the victim, ... [the inquiry] hinges, not on facts unique to each class member, but on the defendant's conduct toward the class as a whole.

*Barefield v. Chevron, U.S.A., Inc.*, 1988 WL 188433, at *3, 1988 U.S. Dist. LEXIS 15816, at *11 (N.D.Cal. Dec. 6, 1988), *aff'd*, 1998 WL 482961, 1998 U.S.App. LEXIS 18840 (9th Cir. Aug. 12, 1998).[12]

---

11. Boeing's statement that "plaintiffs seek only money" is misleading. *See* Def. Resp. Br., Dkt. # 156, at 57. Further, in contrast to plaintiffs in *Dean*, plaintiffs here do not seek compensatory damages, *Compare* Pl. Motion for Class Certification, Dkt. # 127, at 37–43, *with Dean*, 2003 U.S. Dist. LEXIS 8787, at *61.

12. The matter before the Court is distinguishable from *Beck*, 60 Fed.Appx. 38, 40, because the Court *is* certifying a class for backpay.

It is unclear in the Tenth Circuit if punitive damages may be awarded under § 1981a if there is an award of backpay, but no compensatory damages. Despite the Tenth Circuit's silence, the Court assumes, without finding, that the Tenth Circuit would follow the First, Second, Seventh, Eighth and Eleventh Circuits and allow an award of punitive damages without any award of compensatory damages. *See Provencher v. CVS Pharmacy,* 145 F.3d 5, 12 (1st Cir.1998); *Cush–Crawford v. Adchem Corp.,* 271 F.3d 352, 357–59 (2nd Cir.2001); *Timm v. Progressive Steel Treating, Inc.,* 137 F.3d 1008, 1010 (7th Cir.1998); *Salitros v. Chrysler Corp.,* 306 F.3d 562, 575 (8th Cir.2002); *EEOC v. W & O, Inc.,* 213 F.3d 600, 615 (11th Cir.2000). The Court assumes that the Tenth Circuit would hold that "the common law policy prohibiting punitive damages where the plaintiff has not shown any harm is not implicated where the plaintiff has shown wage loss." *Salitros,* 306 F.3d at 575. Therefore, the Court finds that plaintiffs' motion for class certification of Title VII claims for punitive damages, pursuant to Rule 23(b)(2) should be granted.

### 2. *Disparate Impact Claim*

■ Plaintiffs contend that a class may be maintained under Rule 23(b)(2) for the disparate impact claim, and Boeing does little to deny this contention. Punitive damages are not available on plaintiffs' disparate impact claim. *See* 42 U.S.C. § 1981a(a)(1); *Kolstad v. American Dental Ass'n,* 527 U.S. 526, 534, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999). The Court finds that the relief sought by plaintiffs' disparate impact claim is primarily injunctive or declaratory and does not relate predominately to money. *See Rich,* 522 F.2d at 341; *Dean,* 2003 U.S. Dist. LEXIS 8787, at *66–67. Plaintiffs' motion for class certification with respect to its Title VII claims of disparate impact on both the salary and overtime subclasses should be granted.

### III.

Boeing has filed two motions for partial summary judgment (Dkt. ## 07, 164). Boeing's first motion alleges that: (1) each plaintiff's Title VII individual claim should be limited to events occurring within 300 days of her own EEOC charge; (2) plaintiffs' Title VII class claim should be limited to events occurring after May 16, 2001; and (3) plaintiffs' state law implied contract individual and class claims fail as a matter of law. Def. Motion for Partial Summary Judgment, Dkt. # 107, at 1–2. Boeing's second motion alleges that it is entitled to summary judgment on plaintiffs' LMRA § 301 claim because: (1) under the UAW CBAs, no named plaintiff has exhausted her contractual grievance and arbitration remedies and plaintiffs do not allege that UAW has breached its duty of fair representation; (2) any claim under the IAM CBAs fails because no named plaintiff has ever been subject to those CBAs and has no standing to bring an action for breach of those contracts; and (3) any class claims are a collective right of the bargaining unit as a whole, and as such, only the union can bring an action to enforce this provision on behalf of all union members. Def. Motion for Partial Summary Judgment, Dkt. # 164, at 2.

Summary judgment pursuant to Fed. R.Civ.P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Kendall v. Watkins,* 998 F.2d 848, 850 (10th Cir.1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 317, 106 S.Ct. 2548. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.* at 327, 106 S.Ct. 2548.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some

metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 250, 106 S.Ct. 2505. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. *Garratt v. Walker,* 164 F.3d 1249, 1251 (10th Cir.1998).

## A. *Statute of Limitations for Title VII Claims*

All five named plaintiffs have been working for Boeing (or Rockwell International) since August 1997 and continue to work for Boeing.[13] The parties agree on the dates of all relevant actions with respect to the statute of limitations for plaintiffs' individual and class claims. The disagreement is with respect to the effect that certain filings and rulings in *Beck* have on the statute of limitations in this case. Nonetheless, the Court begins with a brief timeline:

- February 25, 2000—Anderson, among others, filed a nation-wide putative class action complaint in the United States District Court for the Western District of Washington titled *Beck v. Boeing.* The *Beck* plaintiffs sought to represent all females employed by Boeing since February 25, 1994.

- May 22, 2000—Anderson filed a charge with the EEOC alleging that Boeing had discriminated against her on the basis of gender.

- March 26, 2001—The EEOC issued Anderson a Notice of Right to Sue letter.

- May 2, 2001—The *Beck* plaintiffs filed their motion for class certification. The *Beck* plaintiffs sought to certify two subclasses made up of (1) "[a]ll non-executive, salaried women employees (excluding SPEEA engineers) in Puget Sound, Wichita, St. Louis, and Long Beach" and "[a]ll hourly women employees covered by collective bargaining agreements with the IAM union in Puget Sound, Wichita, and St. Louis." The *Beck* plaintiffs specifically excluded Oklahoma employees from their proposed class.

- October 19, 2001—The *Beck* court granted the motion for class certification as to women only in the Puget Sound area.

- March 12, 2002—Plaintiffs filed a class action complaint in this Court.

- June 7, 2002—The *Beck* court granted (1) the non-Puget Sound named plaintiffs' request to transfer their individual claims to the various jurisdictions in which they had new lawsuits pending; and (2) Boeing's motion to dismiss the class claims of non-Puget Sound plaintiffs.

- September 17, or November 7, 2002—Wheeler filed a charge with the EEOC.[14]

- November 7, 2002—Dobbs filed her charge with the EEOC.[15]

---

**13.** Sanders accepted a transfer to a Boeing facility in Richardson, Texas in November 2002. The other four named plaintiffs continue to work at Boeing facilities in Oklahoma.

**14.** Although Boeing claims that Wheeler filed her Charge of Discrimination on or about November 7, 2002, and plaintiffs do not specifically dispute the date of November 7 in their response brief, the documents attached to Boeing's motion for partial summary judgment indicate the date of September 17 only. The date of November 7 is not evidenced by either the Charge of Discrimi-

nation, or the deposition testimony cited in Boeing's motion.

**15.** The document provided to the Court indicates that Dobbs filled out the Charge of Discrimination on September 17, 2002. However, plaintiffs' response brief does not deny that the Charge of Discrimination was filed on November 7, 2002. In addition, at her deposition Dobbs appears to admit that the Charge of Discrimination was filed on November 7, 2002. At the deposition Dobbs looked at a document which apparently was another Charge of Discrimination that she signed. Neither party has provided

- November 9, 2002—Sanders filed her charge with the EEOC.

- November 10, 2002—Banks filed her charge with the EEOC.

### 1. *Statute of Limitations for Individual Claims*

■ The parties agree that each plaintiff's Title VII individual claim is limited to events occurring within 300 days of her own EEOC charge. Also, Boeing admits that once *Beck* was filed, the time for *Beck* putative class members to file administrative charges was tolled. Def. Motion for Partial Summary Judgment, Dkt. # 107, at 8, *citing Armstrong v. Martin Marietta Corp.,* 138 F.3d 1374, 1392 (11th Cir.1998). Thus, Boeing also admits that Anderson's individual Title VII claims have been continuously pending before a court since *Beck* was filed on February 25, 2000. *Id.* As a result, Anderson's Title VII individual limitations period goes back 300 days from the day *Beck* was filed. *Id.* at 8–9. Therefore, the Court finds that Anderson's Title VII individual claim is limited to events occurring after May 1, 1999.

■ Banks, Dobbs, Sanders, and Wheeler were not named plaintiffs in *Beck.* Nonetheless, once *Beck* was filed, the time for *Beck* putative class members to file administrative charges was tolled. Def. Motion for Partial Summary Judgment, Dkt. # 107, at 9, *citing Armstrong,* 138 F.3d at 1392. However, the tolling ceased for Oklahoma putative class members when the *Beck* plaintiffs specifically omitted Oklahoma employees from the putative class in their motion for class certification. The time for Oklahoma putative class plaintiffs to file administrative charges was once again tolled when this case was filed on March 12, 2002. Since Banks, Dobbs, Sanders, and Wheeler all filed their charges after March 12, 2002, their individual claims are limited to events occurring within 300 days of March 12, 2002. Therefore, the Court finds that the individual Title VII claims of Banks, Dobbs, Sanders and Wheeler are limited to events occurring after May 16, 2001.

### 2. *Statute of Limitations for Title VII Class Claims*

The Tenth Circuit has held that "exhaustion of individual administrative remedies is insufficient to commence a class action in federal court; rather, one of the named plaintiffs must have exhausted class administrative remedies." *Gulley v. Orr,* 905 F.2d 1383, 1385 (10th Cir.1990). Boeing admits that "the beginning of the class claim period must be the earliest of the 300–day limitations periods of the named plaintiffs." Def. Motion for Partial Summary Judgment, Dkt. # 107, at 9. However, Boeing alleges that plaintiffs' Title VII class claim "is limited to events occurring after May 16, 2001, because that is the earliest viable Title VII limitations period of any named plaintiff who can bring a class action." *Id.* Boeing asserts that Anderson's EEOC charge cannot support a class claim, because the current action was not filed until more than 90 days after she received her Notice of Right to Sue. *Id.* at 10. Boeing claims that Anderson did not have to file a lawsuit within ninety days while *Beck* was pending, but that the tolling "as it relates to Oklahoma putative class claims stopped on May 2, 2001...." *Id.* Boeing asserts that tolling stopped on May 2, 2001, because on that date the plaintiffs in *Beck* specifically excluded Oklahoma employees from their proposed class. Thus, Boeing alleges that since Anderson did not file this lawsuit until March 12, 2002, it was not filed within ninety days of after the Right to Sue letter was issued and the *Beck* tolling ceased. In support of its claim Boeing cites a holding that "[t]olling of the individual's claims continues until either the putative class is narrowed so as to exclude the individual from the class, the individual opts out of the class, or class certification is denied." *In re Indep. Serv. Orgs. Antitrust Litig.,* No. MDL–1021, 1997 WL 161940, at *3, 1997 U.S. Dist. LEXIS 4496, at *14–15 (D.Kan. Mar. 12, 1997).

Plaintiffs agree that a plaintiff must initiate litigation of Title VII claims within ninety days from receiving the Right to Sue letter. Pl. Resp. Br., Dkt. # 125, at 9. However, they claim that Anderson "has fully complied with all administrative requirements—includ-

the November 7, 2002 Charge of Discrimination

to the Court.

ing initiating suit within 90 days of receiving her right-to-sue letter." *Id.* Plaintiffs allege that if Anderson has not fully complied with all administrative requirements, she would not be able to pursue her individual claims for events dating back to at least 300 days prior to the filing of her EEOC charges based on the same right-to-sue letter. *Id.* at 9–10 n. 6. Thus, plaintiffs claim "Boeing's concession that Ms. Anderson's right-to-sue letter is valid for her individual claim compels the conclusion that the right-to-sue letter is valid for her Class claims." *Id.* 10 n. 6, *citing In re Indep. Serv. Orgs. Antitrust Litig.,* 1997 WL 161940, at *3, 1997 U.S. Dist. LEXIS 4496, at *14–15. In addition, plaintiffs allege that Anderson's class claims were

> (i) asserted in the *Beck* complaint and (ii) were ***never dismissed*** for statute of limitations purposes.... Indeed, the *Beck* court authorized Ms. Anderson and the other non-Puget Sound plaintiffs to file their same cases in their home jurisdictions. *See Beck v. The Boeing Co.,* No. C00–301P, Order on Motions (1) to Stay Discovery and (2) for Clarification at 2, 4 (W.D.Wash. Dec. 27, 2001), Ex. 21. The mere fact that certification was not sought at the same time as certification was sought in *Beck* means only that the Court never ruled on certification, not that Ms. Anderson opted out of the class" or that her claims were permanently excluded from the case as Boeing suggests.

*Id.* at 10 n. 8 (emphasis in original). Based on the above explanation, plaintiffs allege that Anderson does not rely on tolling because she was "in court" from the moment she received her right-to-sue letter. *Id.* at 10. Thus, plaintiffs claim that Anderson is the proper class representative with the earliest filed EEOC charge and that, absent their continuing violation theory discussed below, the class period begins no later than May 1, 1999 (300 days prior to her filing the *Beck* complaint on February 25, 2000).[16]

16. Plaintiffs also seem to assert that the individual claims for Banks, Dobbs, Sanders and Wheeler also begin no later than May 1, 1999. Pl. Resp. Br., Dkt. # 125, at 11. However, the Court finds that tolling for these women, who were not named as plaintiffs in *Beck,* did cease

The Court need not determine whether Anderson's EEOC charge can support a putative class claim because it partially accepts plaintiffs' continuing violation theory. Plaintiffs allege that because they "challenge continuing violations, the Class period extends back as far as the continuing violations occurred." Pl. Resp. Br., Dkt. # 125, at 11. The date to which plaintiffs assert the class claims go back is "at least as far as January 1, 1997." *Id.* Plaintiffs do not provide a particular reason for the date of January 1, 1997, other than that the limitations period should extend back as far as the ongoing conduct. *See id.* at 2. The Court accepts plaintiffs' argument that, no matter when Anderson or the other named plaintiffs may have filed their charges, or when actions in *Beck* may or may not have tolled the plaintiffs' class claims, plaintiffs can proceed under a continuing violation theory. However, the Court does not accept plaintiffs' arbitrary date of January 1, 1997.

*Thiessen v. General Electric Capital Corp.,* 267 F.3d 1095 (10th Cir.2001), discussed whether a summary judgment motion can properly address the limitations period in a case in which plaintiffs have asserted pattern or practice claims. *Id.* at 1109. The Tenth Circuit stated that in "... the first stage of a pattern-or-practice case ... a summary judgment motion ... must focus solely on whether there is sufficient evidence demonstrating that defendants had in place a pattern or practice of discrimination during the relevant limitations period." *Id.* The Tenth Circuit also guided district courts by noting

> the outcome of the first stage will essentially resolve the question of whether plaintiffs can properly rely on the "continuing violation" doctrine and seek relief for alleged acts of discrimination occurring more than 300 days prior to the filing of Thiessen's EEOC charge. *See Purrington v. Univ. of Utah,* 996 F.2d 1025, 1028 (10th Cir.1993) (indicating plaintiffs can invoke continuing violation doctrine by demon-

when the *Beck* plaintiffs specifically omitted Oklahoma employees from the *Beck* putative class. Anderson's claims can only possibly survive the tolling cessation of May 2, 2001 because her individual claim was never dismissed in *Beck,* only transferred to this venue.

strating "the maintenance of a company-wide policy of discrimination both before and during the limitations period").

*Id.* at n. 9. Plaintiffs claim that, because Boeing admits plaintiffs are pursuing "pattern or practice" and disparate impact claims for both subclasses, the Court should not grant summary judgment limiting plaintiffs' class claims to only 300 days prior to the filing of their EEOC charges. Pl. Resp. Br., Dkt. # 125, at 13; *see also id.* at n. 13.

Plaintiffs also allege that, under *National Railroad Passenger Corp. v. Morgan,* "when continuing violations of Title VII are alleged and continue into the 300–day pre-filing period, the filing dates impose no temporal limits on the Plaintiff's recovery." Pl. Resp. Br., Dkt. # 125, at 13, *citing* 536 U.S. 101, 122, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). In *Morgan,* the Supreme Court held that a "charge alleging a hostile work environment claim, however, will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." 536 U.S. at 122, 122 S.Ct. 2061. Plaintiffs allege that their claims for disparities in overtime and salary "are 'part of the same unlawful employment practice' that continued into the pre-filing period." Pl. Resp. Br., Dkt. # 125, at 14, *quoting id.* With respect to overtime, plaintiffs allege that their claim is about Boeing's ongoing practices of systematically disfavoring women in the assignment of overtime. *Id.* With respect to salary, plaintiffs also allege that

their claim is "based on the cumulative effect of individual acts." [17] *Id., quoting Morgan* at 115, 122 S.Ct. 2061. Finally, plaintiffs allege that by their vary nature disparate impact claims are continuing violations since "[d]iscriminatory impact cannot be established where you have just one isolated decision." *Id.* at 15, *quoting Ortega v. Safeway Stores, Inc.,* 943 F.2d 1230, 1243 (10th Cir.1991) (internal citations omitted).

Boeing disputes plaintiffs' continuing violation theory by arguing that plaintiffs' claims are: (1) barred by the doctrine of laches; and (2) "the continuing violation theory simply does not apply." Def. Reply Br., Dkt. # 147, at 5. Boeing alleges that plaintiffs' claims regarding the subjective decision making with respect to overtime and salary are "discrete acts, and as such there can be no continuing violation under" *Morgan. Id.*

Although Boeing makes a compelling argument regarding the applicability of the doctrine of laches, the court cannot grant summary judgment limiting the time period for plaintiffs' claims based on this theory. "In order to prove the affirmative defense of laches, the defendant must demonstrate that there has been an unreasonable delay in asserting the claim and that the defendant was materially prejudiced by that delay." *Hutchinson v. Pfeil,* 105 F.3d 562, 564 (10th Cir.1997); *see also Jacobsen v. Deseret Book Co.,* 287 F.3d 936, 949 (10th Cir.2002). Boeing argues its laches defense in its reply brief. As a result, plaintiffs have not had an

---

**17.** Plaintiffs assert that, despite a ruling to the contrary by a district court outside the Tenth Circuit, *see Inglis v. Buena Vista Univ.,* 235 F.Supp. 2nd 1009 (N.D.Iowa 2002), claims for discriminatory pay have long been considered "continuing violations" and should continue to be considered as such after *Morgan.* Pl. Resp. Br., Dkt. # 125, at 15. Instead of following *Inglis,* plaintiffs claim the Court must follow *Goodwin v. General Motors Corp.,* 275 F.3d 1005, 1009–10 (10th Cir.2002), which held that claims for "lingering effects of discriminatory pay" were timely. *Id.* at 13. Plaintiffs' reliance on *Goodwin* is a bit misplaced because plaintiffs assert that it was decided "following *Morgan.*" *Id.* This is not true. *Goodwin* was decided by the Tenth Circuit on January 3, 2002. *Morgan* was decided by the Supreme Court on June 10, 2002. Nonetheless, the Court is not bound by *Inglis.*

Plaintiffs also urge the Court to reject the holding of *Lewis v. Okla. ex. rel. Bd. of Regents,* 42 Fed.Appx. 160 (10th Cir. June 18, 2002), because it is an unpublished case and *Goodwin* is a published case. *Id.* at 15 n. 16. However, the holding in *Lewis* to which plaintiffs refer, *i.e.* plaintiffs can only use a "continuing violations" doctrine when they are unaware that they were being discriminated against, is actually a quote from a published opinion, *Bullington v. United Air Lines, Inc.,* 186 F.3d 1301, 1311 (10th Cir.1999). Nonetheless, *Lewis'* reliance on *Bullington* is not helpful since, in light of *Morgan,* the Tenth Circuit has questioned *Bullington's* holding regarding whether a plaintiff must have been aware that she was being discriminated against. *See Davidson v. Am. Online, Inc.,* 337 F.3d 1179, 1185 (10th Cir.2003). As a result, the Court declines to follow the unpublished *Lewis* opinion.

opportunity to respond. Thus, the Court cannot find that no genuine issue of material fact exists with respect to whether plaintiffs unreasonably delayed in filing their suit. An inquiry into reasonableness is not a matter of law, but a question of fact. Boeing's motion for summary judgment barring plaintiffs from bringing Title VII claims for events dating back to 1997 under the doctrine of laches should be denied.[18]

■ Boeing also alleges that (1) plaintiffs' proposed expansion of the continuing violation theory would nullify the purpose of Title VII's limitations period; (2) the Supreme Court's decision in *Morgan* changed the law on continuing violations to prohibit application of the theory to discrete acts; and (3) the continuing violations theory cannot extend the limitations period for plaintiffs' Title VII claims because the salary and overtime decisions are discrete events to which the continuing violation theory does not apply. Def. Reply Br., Dkt. # 147, at 7–14. In support of its claim that plaintiffs are attempting to expand the continuing violation theory so as to nullify the purpose of Title VII's limitations period, Boeing cites *Cherosky v. Henderson*, 330 F.3d 1243, 1248 (9th Cir.2003), which noted that

> it would eviscerate *Morgan's* premise to circumvent the timely filing requirement merely because a plaintiff alleges that the acts were taken to pursuant to a discriminatory policy.... "[I]f the mere existence of a policy is sufficient to constitute a continuing violation, it is difficult to conceive of a circumstance in which a plaintiff's claim of an unlawful employment action could be untimely."

*Id.* at 1248, *quoting Abrams v. Baylor Coll. of Med.*, 805 F.2d 528, 533 (5th Cir.1986). In *Davidson*, the Tenth Circuit also noted that "*Morgan* implicitly overturns prior Tenth Circuit law in that plaintiffs are now expressly precluded from establishing a continuing violation exception for alleged discrete acts of discrimination occurring prior to the limitations period, even if sufficiently related to those acts occurring within the limitations

period." 337 F.3d at 1185. *Davidson* also notes that this "remains true even if the discrete act was part of a company-wide or systemic policy." *Id.* at 1185–86. However, in contrast to the language already cited from *Cherosky* and *Davidson*, as well as in rebuttal to Boeing's argument that *Morgan* changed the law on continuing violations as applied to this case, the Tenth Circuit added a footnote in *Davidson* that is fatal to Boeing's motion for summary judgment as to the statute of limitations. The Tenth Circuit noted that "[t]he question of how Title VII's filing deadlines should be applied to pattern-or-practice claims based on a series of discriminatory acts, some of which occurred outside the limitations period, has been left unanswered by the Court, and we do not consider it here." *Id.* at 1186 n. 3, *citing Morgan*, 536 U.S. at 115 n. 9, 122 S.Ct. 2061. In *Morgan*, the Supreme Court had specifically noted "[w]e have no occasion here to consider the timely filing question with respect to 'pattern-or-practice' claims brought by private litigants as none are at issue here." 536 U.S. at 115 n. 9, 122 S.Ct. 2061. The Court finds that, because plaintiffs' class claims for disparate treatment and disparate impact are pattern or practice claims, the holdings in *Morgan* and *Davidson* regarding filing deadlines in Title VII cases involving acts both within and outside of the limitations period are inapplicable. As a result, Boeing's arguments against the applicability of the continuing violation theory are not persuasive.

■ The Court now addresses the class limitations period. With regard to the salary subclass, although plaintiffs claim that "common policies and employment practices have governed Boeing's determination of salaries since at least January 1, 1997," the Court finds that the proper limitations period for the salary subclass extends back only until February 5, 1999. In the motion for class certification plaintiffs allege "Boeing senior executives knew of discrimination against women at Boeing's facilities in Oklahoma as early as 1999." Pl. Motion for Class Certifi-

---

**18.** The Court does not accept plaintiffs' theory that the class period extends back to January 1, 1997 for other reasons. *See infra.*

cation, Dkt. # 127, at 10. Plaintiffs also claim that "[a]t least by 1999, Boeing had started including Tulsa in these studies [of gender discrimination], and they showed statistically significant pay disparities adverse to women." *Id.* at 12. In addition, the main factor in the Court's determination of the proper limitations period for the salary subclass is plaintiffs' statement that "[s]ince 1999, Boeing's headquarters has issued annual 'Management Guides' relating to the annual salary planning process, and these guides have been the primary guidance for determining salaries at all of Boeing's Oklahoma sites." *Id.* at 17; *see also* Pl. Resp. Br., Dkt. # 125, at 6. The "Management Guides" state that the documents apply "to all nonrepresented employees." *See, e.g.,* Berman Decl., Dkt. # 138, Ex. 37, 1999 Management Guide, at TBC 05002610. The "1999 Management Guide" is dated February 5, 1999. *Id.* at TBC 05002608. The Court finds that, given its certification of plaintiffs' disparate treatment and disparate impact claims of gender disparities in salary due to a pattern or practice of subjective decision making utilizing corporate policies and guides, the limitations period for the salary subclass' claims extends back to February 5, 1999.

■ With regard to the overtime subclass, plaintiffs also claim that common "policies and employment practices have governed Boeing's overtime allocations since at least January 1, 1997." Pl. Resp. Br., Dkt. # 125, at 5. However, while "a single collective bargaining agreement has applied to all hourly employees at Boeing's Tulsa facilities," there are two separate bargaining agreements which apply to Boeing's programs in western Oklahoma. *Id.* The earliest date on which collective bargaining agreements covering all overtime subclass members existed is July 1, 1997. *See* Berman Decl., Dkt. # 126, Exs. 4 (effective June 25, 1996), 6 (effective July 1, 1997), and 8 (effective April 14, 1997). By July 1, 1997, Boeing's policies on assignment of overtime to employees contained common language.

Nonetheless, the limitations period for plaintiffs' overtime class cannot extend back to July 1, 1997. The Court certified plaintiffs' overtime disparate treatment and disparate impact claims, as well as their claims for injunctive and declaratory relief and backpay. *Supra,* at II, C, 1, a. Plaintiffs did not request compensatory damages. *Supra,* at II, C, 2. Because injunctive and declaratory relief is prospective, and backpay can only be awarded "up to two years prior to the filing of a charge with the EEOC," 42 U.S.C. § 2000e–5(g)(1), the subclass' limitations period cannot extend beyond two years prior to a subclass plaintiff's filing of an EEOC charge. Wheeler filed a charge with the EEOC on September 17, or November 7, 2002.[19] However, the necessity of Wheeler filing an EEOC charge was tolled at the date this lawsuit was filed on March 12, 2002. Therefore, the Court finds that the limitations period for the overtime subclass' claims extends back two years prior to the filing of this lawsuit—to March 12, 2000.

### B. *Implied Contract Claim*

Plaintiffs allege that

Boeing has entered into contracts, and made oral and written representations to plaintiffs and members of the Class, regarding terms and conditions of their employment, including but not limited to assurances that women would and will have the same employment opportunities as others.

. . .

Boeing has breached its employment contracts with plaintiffs and members of the Class and its contractual commitments to others to treat their female employees fairly and not discriminate against them because of their gender.

First Amended Complaint, Dkt. # 150, at ¶¶ 123–24. The claim applies to salaried named plaintiffs Anderson and Sanders.[20] Anderson alleges that her implied contract claim is based, in part, on equal opportunity

---

**19.** *See* note 14, *supra.*

**20.** The parties agree that plaintiffs Banks, Dobbs and Wheeler do not bring claims for breach of implied contract since their contract claims are

based upon Boeing's covenants not to discriminate in the CBAs governing the relationship. Pl. Resp. Br., Dkt. # 125, at 16 n.19.

postings "on the bulletin board at the Boeing company" at "Building 57." Exhibits, Dkt. # 108, Ex. 3, Anderson Depo., at 78–79.[21] Sanders claims that her implied contract claim is based, in part, on Boeing's Business Conduct Guidelines to "...Deal fairly with all employees...Provide equal opportunity for all. And comply with all laws and regulations." Def. Motion for Partial Summary Judgment, Dkt. # 107, Ex. 10, Sanders Depo., at 272. In addition, Sanders claims that her breach of implied contract claim is based upon statements "on the Boeing intranet" that relate to the way Boeing should treat their employees. *Id.* at 292. Lastly, Sanders alleges that her claim is based upon "oral representations."[22] Pl. Resp. Br., Dkt. # 125, at 7.

The Supreme Court of Oklahoma has noted that the

[f]actors which have been isolated as critical to evaluate whether an implied contract right to job security exists are: (a) evidence of some "separate consideration" beyond the employee's services to support the implied term, (b) longevity of employment, (c) employer handbooks and policy manuals, (d) detrimental reliance on oral assurances, pre-employment interviews, company policy and past practices and (e) promotions and commendations.

*Hinson v. Cameron,* 742 P.2d 549, 554–55 (Okla.1987).

Boeing alleges that plaintiffs' implied contract claim fails because it is based upon "vague assurances that are legally insufficient to create an enforceable contract." Def. Motion for Partial Summary Judgment,

Dkt. # 107, at 12, *citing Vice v. Conoco, Inc.,* 150 F.3d 1286, 1289 (10th Cir.1998). Boeing claims that "the kind of aspirational EEO language relied upon by plaintiffs... is insufficient to create an implied contract." *Id.* In support of its claim Boeing points to several Tenth Circuit cases which hold that certain businesses' credos, EEO statements, policy manuals, or corporate philosophies did not create implied contracts. *Id.* at 13, *citing Orback v. Hewlett–Packard Co.,* 97 F.3d 429, 433–34 (10th Cir.1996); *Vasey v. Martin Marietta Corp.,* 29 F.3d 1460, 1465–66 (10th Cir.1994); *Ingels v. Thiokol Corp.,* 42 F.3d 616, 624 (10th Cir.1994); *Dupree v. United Parcel Serv.,* 956 F.2d 219, 222 (10th Cir. 1992).

In *Vasey,* the plaintiff contended that defendant's credo and equal employment memorandum were sufficient to support his implied contract claim. 29 F.3d at 1465. The credo that the plaintiff referred to stated defendant "believes in the highest ethical standards" and was "committed to just management and equality for all...." *Id.* The defendant's "equal opportunity" memorandum stated its commitment to "provide equal employment .... regardless of race, sex, age, handicap...." *Id.* The Tenth Circuit distinguished two cases cited by plaintiff and held that the defendant's

Credo and equal opportunity memorandum do not contain detailed lay-off guidelines or other guarantees of employment... Statements such as these [from the Credo and equal opportunity memorandum] are merely "vague assurances," see *Dupree,* 956 F.2d at 222, and too indefinite to constitute

---

**21.** Although plaintiffs assert that Anderson's implied contract claim is based "in part" on the equal opportunity postings, they do not point to any other evidence upon which Anderson bases her claim. In fact, Anderson stated that there are not any other things that Boeing has done which she felt had breached the agreement that women would and will have the same employment opportunities as others. Exhibits, Dkt. # 108, Ex. 3, Anderson Depo., at 82. Also, in contrast to plaintiffs' claim that the deposition testimony of Anderson concerns "only documents—and not oral representations," Pl. Resp. Br., Dkt. # 125, at 19 n.24, Anderson did testify at her deposition that there had not been any "oral representations" made to her. Exhibits, Dkt. # 108, Ex. 3, Anderson Depo., at 85.

**22.** It is unclear how Sanders bases her claim on oral representations because plaintiffs' citation is to Sanders deposition testimony where the following exchange occurs:

Q: What oral representations were made to you regarding the terms and conditions of your employment?

A: Well, upon hiring, they go through this with you. They go through Boeing's business conduct....

*Id.* at 293. The remainder of Sanders' answer is neither included with Boeing's motion for partial summary judgment nor cited in plaintiffs' response.

a contractual offer which would enable a court to determine whether a contract had been performed.

*Id.* In the case at hand neither party has cited to an exhibit containing Boeing's equal opportunity postings or its Business Conduct Guidelines.[23] Thus, the Court cannot properly evaluate whether Boeing's equal opportunity memoranda or Business Conduct Guidelines constitute only vague assurances, or if they contain detailed guidelines and other guarantees of employment opportunity and non-discrimination.[24]

Boeing also claims that plaintiffs' implied contract claim fails because it is based on Boeing's pre-existing legal obligations. Def. Motion for Partial Summary Judgment, Dkt. # 107, at 14. Boeing alleges that a "claim based on a pre-existing legal obligation to comply with federal and state anti-discrimination laws does not create a separate and independent contractual obligation." *Id.*, citing *Gragg v. James*, 452 P.2d 579, 587 (Okla. 1969) (overruled on other grounds). In *Gragg*, the Oklahoma Supreme Court held that "performance of a duty imposed by law, or of an obligation a party is legally bound to perform, is not sufficient consideration to support a contract." 452 P.2d at 587. The Tenth Circuit has applied this holding, noting that "[when Oklahoma's highest court has said that a pre-existing obligation cannot constitute consideration for a later promise, notwithstanding this statute Okla. Stat. tit. 15, § 107], we must accept that interpretation of Oklahoma law." *Black v. Baker Oil Tools*, 107 F.3d 1457, 1464 (10th Cir.1997).

Plaintiffs allege that this legal argument relating to a pre-existing legal obligation to comply with anti-discrimination laws is a fact-intensive argument that cannot be resolved prior to full merits discovery. Pl. Resp. Br., Dkt. # 125, at 17. Plaintiffs contend that this Court should follow the lead of *Dean* when it ruled in that "given the broad manner in which the implied contract claim was pled [ ], the Court is unwilling to rule until the factual based [sic] for the claim has been established by discovery. The Defendant may present its arguments upon the completion of discovery." 2003 U.S. Dist. LEXIS 8787, at *24–25. Plaintiffs claim that they too are entitled to discovery before being required to present evidence establishing a genuine issue of material fact regarding the merits of their implied contract claim. Pl. Resp. Br., Dkt. # 125, at 18. Plaintiffs conclude their response by stating that "while Boeing now asserts that 'Anderson and Sanders rely on general equal opportunity language contained in Boeing's equal opportunity postings and its Business Conduct Guidelines,' . . . most of those documents have yet to be produced in this litigation." *Id.* at 18–19.

■ The Court finds that plaintiffs rely on nothing more than Boeing's commitment to follow established federal and state law, and that their implied contract claim fails as a matter of law. First, the Court does not find, as the court in *Dean* did, that plaintiffs' implied contract claim was pled in a broad manner. Plaintiffs stated specifically that "Boeing has breached its employment contracts with plaintiffs and members of the Class and its contractual commitments to others to treat their female employees fairly and not to discriminate against them because of their gender." First Amended Complaint, Dkt. # 150, at ¶ 124. Aside from the fact

---

**23.** The Court assumes that plaintiffs did not attach the documents because "Boeing has refused to produce discovery needed to respond to Boeing's motion" as it relates to "requests for Boeing's 'policies and procedures.'" Sprung Aff., Dkt. # 114, at 8. However, Boeing contends that it "has produced copies of its affirmative action plans, equal employment policies, and numerous other policies applicable to Boeing's Oklahoma facilities in response to plaintiffs' document production requests and as part of its initial disclosures." Def. Reply Br., Dkt. # 147, Ex. 3, Babcock Aff., at ¶ 2.

**24.** The Court notes Boeing's argument that once "a defendant files a properly supported motion for summary judgment, it is the plaintiff's burden to show specifically in the record what materials preclude summary judgment." Def. Reply Br., Dkt. # 147, at 15, citing *Burnette v. Dresser Indus., Inc.*, 849 F.2d 1277, 1284 (10th Cir.1988). However, the Court finds that Boeing cannot assert that its motion was "properly supported." Boeing did not provide the Court with a copy of the equal employment opportunity memorandum or Business Conduct Guidelines. Therefore, the Court cannot properly evaluate whether the documents contain only vague assurances.

that plaintiffs plead that Boeing contractually committed to treat females "fairly," their entire claim is based on a pre-existing legal duty imposed by Title VII which bars gender discrimination in employment. Second, as to plaintiffs' claim that Boeing contractually committed to treat them fairly, the Court finds that this "commitment" could never be anything more than a "vague assurance" which the courts have found do not create implied contracts. Lastly, with respect to plaintiffs' claim that they are entitled to discovery before they are required to present genuine issues of material fact, the Court finds that Boeing has produced to plaintiffs' counsel "more than 50,000 pages of documents," as well as designated "thousands of other documents available electronically or from the *Beck* and *Dean* litigations." Def. Reply Br., Dkt. # 147, Ex. 3, Babcock Aff., at ¶ 3. In addition, although the Court previously stated that it does not have a copy of Boeing's Business Conduct Guidelines, it finds that plaintiffs' counsel has or has access to a copy. Plaintiff Sanders read from the document at her deposition. Def. Motion for Partial Summary Judgment, Dkt. # 107, Ex. 10, Sanders Depo., at 272. Therefore, Boeing's partial motion for summary judgment with respect to plaintiffs' implied contract claim should be granted.[25]

### C. *LMRA § 301 Claim*

In its Order dated December 13, 2002, the Court granted Boeing's motion to dismiss plaintiffs' claims for breach of contract under LMRA § 301, 29 U.S.C. § 185. Order, Dkt. # 88, at 10. The Court held that "plaintiffs' claim must fail because it lacks allegations sufficient to support the essential elements of a hybrid claim under [LMRA] § 301." *Id.* at 8. The Court informed plaintiffs that in order to "state a hybrid claim under [LMRA § ] 301, the plaintiffs must allege that the union

failed to properly represent them in grievance or arbitration procedures." *Id., citing Webb v. ABF Freight Sys., Inc.,* 155 F.3d 1230, 1239 (10th Cir.1998).

Plaintiffs subsequently moved for leave to file an amended complaint to expressly state a breach of contract claim under the LMRA. Pl. Motion, Dkt. # 101, at 1. Boeing objected to plaintiffs' motion, Dkt. # 104, and plaintiffs replied, Dkt. # 105. In plaintiffs' reply brief, they stated that "[c]ontrary to Boeing's assertion, plaintiffs' proposed amendment is not futile because plaintiffs do not allege that unions breached their duty of fair representation to plaintiffs." Pl. Reply Br., Dkt. # 105, at 7. Subsequently, the Court granted plaintiffs' motion for leave to file first amended complaint (Dkt.# 113). Plaintiffs filed their first amended complaint specifically asserting a claim of breach of contract in violation of the LMRA on behalf of class members subject to certain CBAs. First Amended Complaint, Dkt. # 150, at ¶¶ 126–35. Plaintiffs claim that eight CBAs between Boeing (or McDonnell Douglas) and IAM and three CBAs between Boeing (or Rockwell International) and UAW were breached because Boeing did not abide by the CBAs' language that prohibits discrimination.[26] *Id.* Specifically, plaintiffs allege that "Boeing has breached its Collective Bargaining Agreements with certain plaintiffs' and class members' unions to treat female employees fairly and not discriminate against them because of their gender." *Id,* at ¶ 134. In the amended complaint plaintiffs did not assert that either union, IAM or UAW, breached its duty of fair representation. *See id.* at 126–35.

Plaintiffs Banks, Dobbs, and Wheeler assert that Boeing breached its covenant not to discriminate contained in the CBAs with UAW. Pl. Resp. Br., Dkt. # 177, at 2. Boeing claims that the UAW CBA details the griev-

---

**25.** Because the Court grants Boeing's partial motion for summary judgment with respect to plaintiffs' implied contract claim, it declines to address the issue of the limitations period for this claim. *See* Def. Motion for Partial Summary Judgment, Dkt. # 107, at 16 n.3.

**26.** Plaintiffs claim that all eleven CBAs contain language that is without material differences and commonly states as follows:

All terms and conditions of employment included in this Agreement shall be administered and applied without regard to race, color, religion, national origin, status as a disabled or Viet Nam era veteran, age, sex, sexual preference, marital status, or the presence of a disability except in those instances where age, sex, or the absence of a disability may constitute a bona fide occupational qualification.
First Amended Complaint, Dkt. # 150, at ¶ 130.

ance and arbitration process for employees to follow if they believe that Boeing has violated the CBA. Def. Motion for Partial Summary Judgment, Dkt. # 164, Ex. 1–B, at 27–36. Plaintiffs agree with Boeing's claim that "the UAW grievance process is a multi-step process, including an employee meeting with her supervisor, a grievance being filed with the union, an appeal of the grievance, and arbitration," Pl. Resp. Br., Dkt. # 177, at 3, but assert that "it is not true that the entire 'grievance and arbitration process' is one 'for employees to follow. . . .'" Id. (emphasis in original). Instead, plaintiffs claim that the UAW CBA only allows the employee to initiate Step I in the grievance process. Id., citing Def. Motion for Partial Summary Judgment, Dkt. # 164, Ex. 1–B, at 28. Plaintiffs support this claim by noting that the union "Committee person and the Supervisor shall have full authority to settle the problem." Def. Motion for Partial Summary Judgment, Dkt. # 164, Ex. 1–B, at 28. Plaintiffs also assert that an employee does not have the right to appeal Step 1 resolutions or Step II[sic] determinations, or the right to seek arbitration. Id. at 29–32.

Plaintiffs also assert that Boeing breached the non-discrimination provisions of the CBAs between Boeing and IAM that govern the employment of hourly employees. See First Amended Complaint, Dkt. # 150, at ¶¶ 126–35; see also Pl. Resp. Br., Dkt. # 177, at 13. The IAM CBAs do not require that class grievances based on the non-discrimination section be subject to the grievance procedure and arbitration. See, e.g., Def. Motion for Partial Summary Judgment, Dkt. # 164, Ex. F, at 16. None of the named plaintiffs, or their one hourly witness, is or was represented by IAM. See Pl. Resp. Br., Dkt. # 177, at 13.

### 1. UAW CBA Claims

Boeing claims that plaintiffs' LMRA § 301 individual claims for breach of the UAW CBA are barred because they failed to exhaust their available contractual remedies and because they do not allege that the union breached its duty of fair representation. Def. Motion for Partial Summary Judgment, Dkt. # 164, at 9. In direct contradiction to

Boeing, plaintiffs claim that their testimony demonstrates that UAW breached its duty of fair representation in processing their grievances. Pl. Resp. Br., Dkt. # 177, at 12. In support of their claim, plaintiffs cite to testimony from the depositions of Banks, Dobbs, and Wheeler. Id. at 4–9. However, Boeing replies that plaintiffs did not include such an allegation in their complaint, "as required to adequately plead [an LMRA] § 301 claim." Def. Reply Br., Dkt. # 180, at 4, citing Conn v. GATX Terminals Corp., 18 F.3d 417, 420 (7th Cir.1994) ("What is clear, however, and dooms the suit, is that the complaint does not state a claim for breach of the duty of fair representation.").

First, plaintiffs "certainly should have known of the pleading requirement," id., because the Court stated in its Order dated December 13, 2002, "[t]o state a hybrid claim under [LMRA § ] 301, the plaintiffs must allege that the union failed to properly represent them in grievance or arbitration procedures." Order, Dkt. # 88, at 8. Second, in order to refute Boeing's claim that plaintiffs' LMRA § 301 claim was not futile, plaintiffs represented to the Court "plaintiffs do not allege the unions breached their duty of fair representation to plaintiffs." Pl. Reply Br., Dkt. # 105, at 7. Third, plaintiffs did not assert that UAW breached its duty of fair representation in their amended complaint. First Amended Complaint, Dkt. # 150, at ¶¶ 126–35. Apparently sometime between July 22, 2003 (when plaintiffs filed their first amended complaint) and October 1, 2003 (when plaintiffs filed their response to Boeing's motion for partial summary judgment) plaintiffs came to the conclusion that they should assert that UAW breached its duty of fair representation.

■■■ Boeing also claims that the "doctrine of judicial estoppel prohibits plaintiffs from now claiming that the union breached its duty of fair representation." Def. Reply Br., Dkt. # 180, at 5. Boeing claims that because plaintiffs specifically stated to the Court that they did not allege the unions breached their duty of fair representation in order convince the Court to allow them to amend their complaint, judicial estoppel applies. Id., cit-

*ing New Hampshire v. Maine,* 532 U.S. 742, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001).

> Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Davis v. Wakelee,* 156 U.S. 680, 689[, 15 S.Ct. 555, 39 L.Ed. 578] (1895). This rule, known as judicial estoppel, "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Pegram v. Herdrich,* 530 U.S. 211, 227, n. 8[, 120 S.Ct. 2143, 147 L.Ed.2d 164] (2000); 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4477, p. 782 (1981) ("absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory").

*New Hampshire,* 532 U.S. at 749, 121 S.Ct. 1808. Boeing claims that plaintiffs

> only now have read the applicable provision of the CBA, and have discovered that are, in fact, required to exhaust their contractual remedies. So, plaintiffs now claim that the union breached its duty of fair representation (as is required for a hybrid claim), ignoring the fact that they have continually represented that they are not making such a claim. Allowing plaintiffs to change their position at this state of the case would be unjust.

Def. Reply Br., Dkt. # 180, at 6. Given the Court's prior warning that "plaintiffs must provide Boeing with fair notice of what their claim is," Order Dkt. # 88, at 8, and applying the doctrine of judicial estoppel, Boeing's motion for summary judgment with respect to plaintiffs' LMRA § 301 claim for breaches of the UAW CBAs should be granted.

**27.** Class certification will result in class-wide merits discovery. Following that, additional mo-

### 2. *IAM CBA Claims*

■ The parties agree that no named plaintiff has ever been represented by the IAM. Based upon this undisputed fact, Boeing moves for summary judgment on plaintiffs' LMRA § 301 breach of contract claims on behalf of employees represented by the IAM because it claims that plaintiffs have no standing to bring an action for breach of that contract. Def. Motion for Partial Summary Judgment, Dkt. # 164, at 11. "To have standing to bring an action for breach of a collective bargaining agreement, a party must be either a member of the collective bargaining unit covered by the agreement or a third party beneficiary of that agreement." *Sepulveda v. Pacific Mar. Assoc.,* 878 F.2d 1137, 1139 (9th Cir.1989). Plaintiffs attempt to distinguish their situation from that of *Sepulveda* by claiming that in *Sepulveda* the plaintiffs "lacked standing because they were not covered by any CBA." Pl. Resp. Br., Dkt. # 177, at 16 (emphasis in original). However, plaintiffs ignore the plain language of the holding by the Ninth Circuit. The Ninth Circuit did not hold that standing exists if plaintiffs are covered by one CBA, but are claiming breach of a separate CBA. The Ninth Circuit held that standing could only be found under plaintiffs' scenario if plaintiffs can prove they are third party beneficiaries of the CBA. Plaintiffs would have to prove that, although they are not members of the IAM and therefore not covered by the agreements between IAM and Boeing, they are third party beneficiaries to the IAM/ Boeing agreements. Plaintiffs have failed to provide this requisite proof. Simply because plaintiffs and IAM members are all subject to similar overtime policies and practices, as well as similar covenants not to discriminate, does not mean that members of UAW are third party beneficiaries of CBAs between the IAM and Boeing. Boeing's *motion for* summary judgment with respect to plaintiffs' LMRA § 301 claim for breaches of the IAM CBAs should be granted.

### IV.

As a result of the findings above, the Court certifies claims on behalf of the following class: [27]

tions for summary judgment may be filed. Merely because the court has certified a class does not

All non-executive salaried and hourly female employees, excluding women who signed Mutual Agreements to Arbitrate Claims with Rockwell International Corporation or Boeing North American, Inc., who have been employed in Boeing facilities in Oklahoma at anytime from the appropriate date of the individual's subclass to the present.

The Class shall consist of two subclasses:

(1) the "**Salary Subclass**," consisting of all non-executive salaried female employees of Boeing from February 5, 1999 until the present; and

(2) the "**Overtime Subclass**," consisting of all hourly female employees of Boeing from March 12, 2000 until the present.

The class is certified with respect to a disparate treatment pattern or practice claim and a disparate impact claim. The class is also certified with respect to claims for injunctive and declaratory relief, as well as claims for backpay and punitive damages. The class is not certified with respect to claims for breach of implied contract or under LMRA § 301.

### V.

For the reasons stated above, Defendant's Motion for Partial Summary Judgment (Dkt.# 107) is **GRANTED in part and DE-NIED in part**: it is granted insofar as each plaintiff's individual claim is limited to events occurring within 300 days of her own EEOC charge, and with respect to plaintiffs' individual and class breach of implied contract claims; it is denied as to the cutoff date for plaintiffs' class claims, and as to plaintiffs' claims being barred under the doctrine of laches. Defendants' Motion for Partial Summary Judgment (Dkt.# 164) is **GRANTED** as to the LMRA § 301 claim. Plaintiffs' Motion for Class Certification (Dkt.# 127) is **GRANTED in part and DENIED in part**: it is granted as to plaintiffs' Title VII disparate treatment pattern or practice claim and disparate impact claim, as well as plaintiffs' Title VII injunctive and declaratory relief, backpay, and punitive damages claims; it is **DENIED** as moot with respect plaintiffs'

ensure that the case will go to trial. *See Carpenter, et. al v. Boeing Co.*, No. 02–1019–WEB (D.Kan. Feb.24, 2004), Dkt. #___, attachment

LMRA § 301 and breach of implied contract claims. Defendants' Motion to Exclude Expert Testimony of Dr. Bernard Siskin (Dkt.# 155) is **DENIED**.

(order granting summary judgment and partial decertification; denying withdrawal of plaintiffs' counsel and severance).